1  MICHAEL D. HYNES (New York Bar No. 30634394 *admitted pro hac vice*)
   Michael.Hynes@us.dlapiper.com
2  **DLA PIPER LLP (US)**
   1251 Avenue of the Americas, 27th Floor
3  New York, NY 10020-1104
   Tel.:   212. 335.4500
4  Fax:    212 335.4501

5  LUPE R. LAGUNA (CA Bar No. 307156)
   Lupe.Laguna@us.dlapiper.com
6  **DLA PIPER LLP (US)**
   400 Capitol Mall, Suite 2400
7  Sacramento, CA 95814-4428
   Tel.:   916 930 3200
8  Fax:    916 930 3201

9  Attorneys for Defendant Katapult Group, Inc.

10

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13                            **OAKLAND DIVISION**

14

15  ANDREW WEINSTEIN,                    CASE NO.  4:21-cv-05175-PJH

                     Plaintiff,          **DEFENDANT KATAPULT GROUP, INC.'S**
16                                       **NOTICE OF MOTION AND MOTION TO**
                                         **COMPEL ARBITRATION AND DISMISS,**
17  v.                                   **OR ALTERNATIVELY STAY,**
                                         **PROCEEDINGS; MEMORANDUM OF**
    KATAPULT GROUP, INC., a Delaware     **POINTS AND AUTHORITIES IN**
18  corporation; and DOES 1 through 10,  **SUPPORT THEREOF**
    inclusive,
19
                     Defendants.         Date:   September 23, 2021
20                                       Time:   1:30 p.m.
                                         Dept.:  Courtroom 3 – 3rd Floor
21                                               Ronald V. Dellums Federal Building
                                                 & U.S. Courthouse
22                                       Judge:  Phyllis J. Hamilton

23                                       Complaint Filed: April 12, 2021
                                         Removal: July 6, 2021
24                                       Trial Date: Not Set

25

26

27

28

DLA PIPER LLP (US)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 23, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the Oakland Division of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Phyllis J. Hamilton, by remote conferencing as directed by the Court, Defendant Katapult Group, Inc. ("Katapult") will, and hereby does, move the Court for an order compelling arbitration of Plaintiff Andrew Weinstein's ("Plaintiff") claimfs set forth in his Complaint; and an order dismissing all judicial proceedings pending completion of such arbitration. Alternatively, should the Court not dismiss this action in its entirety, Katapult requests an order staying the action pending completion of arbitration.

This Motion is made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* on the grounds that an arbitration agreement incorporated by reference into the agreement attached to Plaintiff's complaint as Exhibit "A" requires that the claims asserted in Plaintiffs' lawsuit be submitted to binding arbitration.  Pursuant to FAA § 3, an order dismissing or staying this matter pending arbitration is proper.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice; the pleadings and evidence on file in this matter; oral argument of counsel; and such other materials and argument as properly may be presented in connection with the hearing.

Dated: July 27, 2021

DLA PIPER LLP (US)


By: */s/ Lupe R. Laguna*
    MICHAEL D. HYNES
    LUPE R. LAGUNA
    Attorneys for Defendant
    Katapult Group, Inc.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   SUMMARY OF FACTUAL BACKGROUND ................................................................. 2

    A.   Weinstein and the Company Enter and Execute an Advisor Agreement. ............. 2

    B.   The Advisor Agreement Explicitly Incorporates the Company's Stock
         Option Plan. .......................................................................................................... 2

    C.   The Stock Option Plan Contains a Clear and Unequivocal Arbitration
         Provision that Incorporates the JAMS Arbitration Rules. ................................... 3

    D.   Plaintiff Ignores the Applicability of the Arbitration Provision and Files the
         Instant Action. ...................................................................................................... 4

III.  STATEMENT OF ISSUES TO BE DECIDED .................................................................. 4

IV.   PLAINTIFF'S CLAIMS MUST BE COMPELLED TO ARBITRATION ....................... 5

    A.   The Federal Arbitration Act Provides the Applicable Standard for
         Katapult's Motion ................................................................................................ 5

    B.   If Plaintiff Contests Arbitrability, the Court Must Compel Arbitration to
         Determine the Arbitrability of Plaintiff's Claim ................................................. 6

    C.   Even If the Court Rejects the Unmistakable Delegation of Authority to
         Determine Arbitrability, Plaintiff is Bound to Arbitrate His Claim...................... 8

         1.   A valid agreement to arbitrate exists between plaintiff and
              defendant because it was incorporated by reference into the Advisor
              Agreement. ................................................................................................. 8

         2.   The Stock Option Plan's arbitration provision is valid and
              enforceable. ............................................................................................ 11

         3.   The Stock Option Plan's arbitration provision encompasses
              Plaintiff's claims. ................................................................................... 11

    D.   This Proceeding Should Be Dismissed or Stayed Pending Arbitration of the
         Claims. ............................................................................................................... 12

V.    CONCLUSION ................................................................................................................ 12

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986) ........................................................................................................5

*Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.,*
    6 Cal. App. 4th 1266 (1992)..........................................................................................10

*Brennan v. Opus Bank,*
    796 F.3d 1125 (9th Cir. 2015)......................................................................................5, 6

*Brokaw v. Qualcomm Inc.,*
    122 F. App'x 305 (9th Cir. 2004) (unpublished) ...........................................................4

*Burnett v. Macy's West Stores, Inc.,*
    2011 WL 4770614 (E.D. Cal. Oct. 7, 2011) ................................................................12

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199, 45 Cal. Rptr. 3d 692 (2006)....................................................10

*Caviani v. Mentor Graphics Corp.,*
    2019 WL 4470820 (N.D. Cal. Sept. 18, 2019) ........................................................7, 11

*Consolidated Precision Prod. Corp. v. Gen. Elec. Co.,*
    No. 15-CV-8721 (PKC), 2016 WL 2766662 (S.D.N.Y. May 12, 2016) .........................8, 9, 10

*Contec Corp. v. Remote Sol., Co.,*
    398 F.3d 205 (2d Cir. 2005)............................................................................................7

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.,*
    748 F.3d 249 (5th Cir. 2014)...........................................................................................8

*Davis v. Nordstrom, Inc.,*
    755 F.3d 1089 (9th Cir. 2014).........................................................................................8

*Doctor's Associates., Inc. v. Casarotto,*
    517 U.S. 681 (1996) ......................................................................................................11

*Erickson v. Thrivent Ins. Agency Inc.,*
    231 F. Supp. 3d 324 (D.S.D. 2017)................................................................................8

*Fed. Ins. Co. v. Metro. Transportation Auth.,*
    785 F. App'x 890 (2d Cir. 2019)....................................................................................8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

*Federal Insurance Co. v. Metropolitan Transportation Authority*,
  2018 WL 5298387 (S.D.N.Y. Oct. 25, 2018), *aff'd*, 785 F. App'x 890 (2d Cir. 2019) .................................................................................................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ......................................................................................6

*Jones v. Bank of Am., N.A.*,
  311 F. Supp. 2d 828 (D. Ariz. 2003) ...............................................................4

*Kinsey v. Cendant Corp.*,
  521 F. Supp. 2d 292 (S.D.N.Y. 2007) ..............................................................4

*LDF Constr., Inc. v. Texas Friends of Chabad Lubavitch, Inc.*,
  459 S.W.3d 720 (Tex. App. 2015) ...................................................................9

*LeBoeuf v. NVIDIA Corp.*,
  833 F. App'x 465 (9th Cir. 2021) (unpublished) .........................................1, 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .........................................................................................5

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) .........................................................................6

*Monzon v. Southern Wine & Spirits of California*,
  2011 WL 2884884 (N.D. Cal. Jul. 19, 2011) .................................................12

*Moses H. Cone Memorial Hospital. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) .............................................................................................6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ......................................................................6, 7

*Prima Paint Corp. v. Flood & Conklin*,
  388 U.S. 395, 402 (1967) .................................................................................5

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
  991 F.2d 42 (2d Cir. 1993) ..............................................................................8

*R.J. O'Brien & Associates, Inc. v. Pipkin*,
  64 F.3d 257 (7th Cir. 1995) .............................................................................8

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ...........................................................................................6

*Roy v. Gen. Elec. Co.*,
  544 F. Supp. 2d 103, 109 (D.R.I. 2008) ..........................................................4

*Sheils v. Pfizer, Inc.*,
  156 F. App'x 446 (3d Cir. 2005)............................................................................4

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999)..............................................................................11

*Slaught v. Bencomo Roofing Co.*,
  25 Cal. App. 4th 744 (1994)..............................................................................10

*Sparling v. Hoffman Const. Co.*,
  864 F.2d 635 (9th Cir. 1988)..............................................................................12

*Sugerman v. MCY Music World, Inc.*,
  158 F. Supp. 2d 316 (S.D.N.Y. 2001)................................................................10

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir.2004).............................................................................12

**Statutes**

United States Arbitration Act, 9 U.S.C. Sections 116 ................................................3, 4

**Other Authorities**

Local Rule 7-4(a)(3)..................................................................................................4

Rule 11 ..............................................................................................................1, 4, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    Defendant Katapult Group, Inc. ("Katapult" or "the Company") seeks an order compelling

3    Plaintiff to abide by the contract attached to his complaint as Exhibit "A," as well as the terms

4    incorporated therein, and directing him to submit his claims to binding arbitration.

5    **I.    INTRODUCTION**

6    After waiting nearly three years to exercise stock options that expired long ago, Plaintiff

7    brings the instant action claiming breach of contract, declaratory relief, and quantum merit. But

8    the same agreement Plaintiff claims Katapult breached prohibits this action all together. Pursuant

9    to an arbitration provision incorporated by reference into the agreement Plaintiff attached to his

10   complaint, he must submit this dispute to binding arbitration administered pursuant to the JAMS

11   Comprehensive Arbitration Rules and Procedures. Katapult's motion to compel arbitration should

12   thus be granted for no less than the following reasons:

13   First, to the extent Plaintiff challenges the arbitrability of this dispute, such threshold

14   questions have been expressly delegated to the arbitrator. The JAMS Arbitration Rules and

15   Procedures, which expressly apply to the arbitration provision at issue, state that "Jurisdictional

16   and arbitrability disputes, ***including disputes over the formation, existence, validity, interpretation***

17   ***or scope of the agreement under which Arbitration is sought*** . . . shall be submitted to and ruled

18   on by the Arbitrator." (Request for Judicial Notice, Ex. B ("JAMS Arbitration Rules") at Rule 11

19   (emphasis added).) As the Ninth Circuit has explained, "incorporation of the Judicial Mediation

20   and Arbitration Services (JAMS) Rules clearly and unmistakably evidences the parties' intention

21   to delegate issues of arbitrability to the arbitrator." *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465,

22   466–67 (9th Cir. 2021) (unpublished).

23   Second, even if the Court elected to decide the issue of arbitrability, it should compel

24   arbitration. Plaintiff is bound by the arbitration provision because it is incorporated by reference

25   in the contract attached as Exhibit "A" to Plaintiff's complaint. And Plaintiff's claims each fall

26   squarely within the arbitration provision's purview. Finally, because every one of Plaintiff's claims

27   is arbitrable, the Court should dismiss this action. Alternatively, the Court must issue a stay.

28

## II.    SUMMARY OF FACTUAL BACKGROUND

### A.    Weinstein and the Company Enter and Execute an Advisor Agreement.

Plaintiff purports to be a sophisticated executive and consultant "focused, among other things, on the convergence of financial technology (fintech), mobility, and the future of commerce." (*See* Compl., ¶ 1.) Katapult, formerly Cognical d/b/a Zibby, is an online consumer leasing platform for brick-and-mortar and omnichannel retailers. (*Id.* at ¶ 2.) On December 2, 2014, Katapult and Plaintiff allegedly entered an Advisor Agreement ("the Advisor Agreement") pursuant to which Plaintiff agreed to provide consultant services to the Company. (*See* Compl., Ex. A.) In exchange, the Company paid Plaintiff a handsome salary of $15,000.00 on a quarterly basis. (*See id.*) Plaintiff does not claim that Katapult failed to provide him with each of these payments. (*See* Compl. generally.) In addition to the cash payments, subject to certain conditions, Plaintiff was also entitled to earn "options to purchase 76,435 shares of Company common stock[.]" (*Id.*, Ex. A.) The Advisor Agreement is governed by New York law. (*Id.*, Ex. A at ¶ 7.)

Between July 13, 2015 and June 13, 2017, Plaintiff had access to information relating to his stock options and received monthly email updates showing how many options under the Advisor Agreement had vested. (*Id.* at ¶ 8.) On June 13, 2017, Plaintiff allegedly received the final such update indicating that 63.8% of his stock options had vested. (*Id.*) Plaintiff ceased providing his consulting services to Katapult shortly thereafter and Plaintiff and Katapult went their separate ways.

### B.    The Advisor Agreement Explicitly Incorporates the Company's Stock Option Plan.

The Advisor Agreement did not detail the material terms relating to Plaintiff's stock options, such as the exercise price and expiration date. (*See id.*, Ex. A.) Instead, the Advisor Agreement incorporated by reference the Company's Stock Option Plan. (*See id.*, Ex. A at ¶ I-1.) Specifically, as explicitly stated in the draft of the Advisor Agreement attached to Plaintiff's complaint as Exhibit "A"—and which Plaintiff claims is a true and correct copy of the operative agreement—Plaintiff's stock options are "subject to vesting ratably over 36 months with 100% of the unvested shares subject to acceleration in the event of a change in control of the Company, ***as well as the other***

-2-

1  *terms of the Company's Stock Option Plan* and the applicable form of   Stock Option

2  Agreement[.]"  (*Id.* (emphasis added).)

3      **C.      The Stock Option Plan Contains a Clear and Unequivocal Arbitration
               Provision that Incorporates the JAMS Arbitration Rules.**

4

5          The Stock Option Plan thus contains the material terms relating to Plaintiff's stock options.

6  (*See* Request for Judicial Notice, Ex. A ("The Stock Option Plan").)   Among these terms is an

7  arbitration provision.  The arbitration provision explicitly applies to "each party to an agreement

8  governed hereby" and incorporates "the J.A.M.S./Endispute Comprehensive Arbitration Rules and

9  Procedures."  (Stock Option Plan, Section 16 ¶ (a).)   The arbitration provision states the following:

10     (a)    Except as provided below, ***any dispute arising out of or relating to this Plan or any
               Award made hereunder, or any agreement executed in connection herewith, or
11             the breach, termination or validity of this Plan, any such Award or any such
               agreement, shall be finally settled by binding arbitration conducted expeditiously
12             in accordance with the J.A.M.S./Endispute Comprehensive Arbitration Rules and
               Procedures (the "J.A.M.S. Rules")***. The arbitration shall be governed by the United
13             States Arbitration Act, 9 U.S.C. Sections 116, and judgment upon the award
               rendered by the arbitrators may be entered by any court having jurisdiction thereof.
14             The place of arbitration shall be within the State of New York.

15     (b)    The arbitration shall commence within 60 days of the date on which a written
               demand for arbitration is filed by any party hereto. In connection with the arbitration
16             proceeding, the arbitrator shall have the power to order the production of documents
               by each party and any third-party witnesses.  In addition, each party may take up to
17             three (3) depositions as of right, and the arbitrator may in his or her discretion allow
               additional depositions upon good cause shown by the moving party.  However, the
18             arbitrator shall not have the power to order the answering of interrogatories or the
               response to requests for admission. In connection with any arbitration, each party to
19             the arbitration shall provide to the other, no later than seven (7) business days before
               the date of the arbitration, the identity of all individuals who may testify at the
20             arbitration and a copy of all documents that may be introduced at the arbitration or
               considered or used by a party's witness or expert. The arbitrator's decision and
21             award shall be made and delivered within six (6) months of the selection of the
               arbitrator. The arbitrator's decision shall set forth a reasoned basis for any award of
22             damages or finding of liability.  The arbitrator shall not have power to award
               damages in excess of actual compensatory damages and shall not multiply actual
23             damages or award punitive damages, and each party hereby irrevocably waives any
               claim to such damages.

24     (c)    ***The Company, each Grantee hereunder, each party to an agreement governed
               hereby and any other Holder of Stock issued under this Plan (each, a "Party")
25             covenants and agrees that such Party will participate in the arbitration in good
               faith***. This Section 16 applies equally to requests for temporary, preliminary or
26             permanent injunctive relief, except that in the case of temporary or preliminary
               injunctive relief any party may proceed in court without prior arbitration for the
27             limited purpose of avoiding immediate and irreparable harm.

28

DLA Piper LLP (US)

-3-

(*Id.* (emphasis added).)  Pursuant to Rule 11 of the JAMS Arbitration Rules, "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator."  (JAMS Arbitration Rules, Rule 11.)

> **D.**  **Plaintiff Ignores the Applicability of the Arbitration Provision and Files the Instant Action.**

On December 18, 2020, Katapult announced that it had entered into a merger deal that would result in Katapult being acquired via a special purpose acquisition company.  Four days later —and ***more than three years*** after his relationship with the Company had ended—Plaintiff resurfaced and demanded to exercise his options to purchase the 76,435 shares of Katapult stock that he had allegedly earned pursuant to the Stock Option Plan.  (Compl. at ¶ 10.)  Katapult informed Plaintiff that his options had expired 90 days after the conclusion of his consultancy services to the Company.  (*Id.*)  Such an expiration provision is standard in consulting agreements and is frequently enforced.[1]  In response, Plaintiff initiated this action claiming breach of contract stemming from Katapult's alleged failure to "exercise his options and/repudiating its obligations to do so pursuant to the advisor agreement."  (*Id.* at ¶ 15.)  Plaintiff brings purported claims for declaratory relief and quantum meruit based on these same general allegations.  (*See id.* at ¶¶ 17 – 23.)  For the reasons discussed herein, Plaintiff must be directed to submit his claims to binding arbitration.

## III.   STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3), Katapult presents the following issues to be decided: (1) If Plaintiff challenges the formation or validity of the arbitration agreement, should the Court

---

[1] *See, e.g.*, *Brokaw v. Qualcomm Inc.*, 122 F. App'x 305, 306 (9th Cir. 2004) (unpublished) (summarily dismissal of the plaintiff's claims because "any stock options granted to him . . . expire[d] shortly after the termination of his employment."); *Sheils v. Pfizer, Inc.*, 156 F. App'x 446, 451 (3d Cir. 2005) (applying California law and holding that employee's failure to timely exercise options after termination resulted in forfeiture); *Kinsey v. Cendant Corp.*, 521 F. Supp. 2d 292, 305 (S.D.N.Y. 2007) (granting summary judgment for employer in stock option dispute because the plaintiff's right to exercise those options had expired); *Roy v. Gen. Elec. Co.*, 544 F. Supp. 2d 103, 109 (D.R.I. 2008) (observing that, "Plaintiff's failure to exercise his stock options before their expiration effectively negates his breach of contract claim."); *Jones v. Bank of Am., N.A.*, 311 F. Supp. 2d 828, 837 (D. Ariz. 2003) ("While it may be unfortunate that Plaintiff did not exercise his options within the 90 days allowed . . . there are no issues of material fact in dispute and Defendant's Motion for Summary Judgment on the Breach of Contract issue must be granted.").

1   enforce the parties' express delegation of determining arbitrability to the arbitrator? (2) If the Court

2   determines it should decide arbitrability, must the Court compel Plaintiff's claims against Katapult

3   relating to his stock options, pursuant to the Stock Option Plan's arbitration provision? (3) If

4   arbitration is compelled as to each of Plaintiff's claims, must Plaintiff's case be dismissed or

5   stayed?

6   **IV.    PLAINTIFF'S CLAIMS MUST BE COMPELLED TO ARBITRATION**

7           Plaintiff's claims relating to the stock options he allegedly earned must be compelled to

8   arbitration pursuant to the Stock Option Plan's arbitration provision.  If Plaintiff challenges that

9   formation or validity of the agreement to arbitrate, these issues have been expressly delegated to

10  the arbitrator.  And, even if the Court elects to decide arbitrability, it should compel arbitration

11  because the Stock Option Plan's arbitration provision is incorporated by reference into the Advisor

12  Agreement and Plaintiff's claims fall squarely within that provision's purview.

13          **A.    The Federal Arbitration Act Provides the Applicable Standard for Katapult's
              Motion**

14

15          The Federal Arbitration Act ("FAA") controls the analysis of Katapult's motion.  The

16  Supreme Court has held that the FAA in federal court to diversity suits, like the instant action,

17  which relate to contracts involving interstate commerce.  *See Prima Paint Corp. v. Flood & Conklin*

18  Mfg. Co., 388 U.S. 395, 402 (1967).  Here, the Advisor Agreement was a transaction between

19  Plaintiff in California and Katapult, an out-of-state corporation.  Thus, the contracts at issue involve

20  interstate commerce and the FAA controls.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir.

21  2015) (rejecting the application of state law and observing that it is undisputable that the FAA

22  "applies to any contract, like the present one, 'evidencing a transaction involving commerce.'").

23          The FAA represents a "liberal federal policy favoring arbitration agreements[.]"  *Mitsubishi*

24  *Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).  Accordingly, "where

25  the contract contains an arbitration clause," the obligation to arbitrate a dispute "should not be

26  denied unless it may be said with positive assurance that the arbitration clause is not susceptible of

27  an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."

28  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (*quoting United*

-5-

1 | *Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582-83 (1960)).  Thus, as a

2 | matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in

3 | favor of arbitration, whether the problem at hand is the construction of the contract language itself

4 | or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Memorial*

5 | *Hospital. v. Mercury Const. Corp*., 460 U.S. 1, 24-25 (1983).

6 |        **B.**      **If Plaintiff Contests Arbitrability, the Court Must Compel Arbitration to Determine the Arbitrability of Plaintiff's Claim**

7 |

8 |         If Plaintiff claims he never agreed to arbitrate, or otherwise contests arbitrability, the Court

9 | should compel arbitration to determine the merits of Plaintiff's challenges to arbitrability.

10 | Generally, in deciding whether to compel arbitration, a court must determine two "gateway" issues:

11 | (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement

12 | covers the dispute.  *Brennan*, 796 F.3d at 1130.

13 |         But, "***these gateway issues can be expressly delegated to the arbitrator*** where 'the parties

14 | clearly and unmistakably provide otherwise.'"  *Id.*  Thus, prior to considering the threshold

15 | questions of "whether a valid arbitration agreement exists and whether the scope of the dispute falls

16 | within that agreement," a court must first look to the arbitration agreement at issue and determine

17 | whether the question of arbitrability has been delegated to an arbitrator.  *Rent-A-Center, W., Inc. v.*

18 | *Jackson*, 561 U.S. 63, 70 (2010); *Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1206 (9th Cir.

19 | 2016) (holding a court must first decide whether the enforceability of an arbitration agreement was

20 | delegated to an arbitrator); *Oracle Am., Inc. v. Myriad Grp. A.G*., 724 F.3d 1069, 1072 (9th Cir.

21 | 2013) (*citing Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d

22 | 491 (2002).  Courts routinely hold that language "delegating to the arbitrators the authority to

23 | determine the validity or application of any of the provisions of the arbitration clause constitutes

24 | an agreement to arbitrate threshold issues concerning the arbitration agreement."  *Uber*, 848 F.3d

25 | at 1208 (*quoting Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).  As the Supreme Court

26 | unanimously recently explained, "this is because . . . arbitration is a matter of contract, and courts

27 | must enforce arbitration contracts according to their terms."  *Henry Schein, Inc. v. Archer & White*

28 | *Sales, Inc*., 139 S. Ct. 524, 529 (2019) (*citing Rent–A–Center*, 561 U.S. at 67).

1    In determining whether arbitrability has been delegated to the arbitrator, courts look not

2 only to the text of the arbitration provision but also the applicable arbitration rules incorporated

3 into that provision.  *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)

4 ("Virtually every circuit to have considered the issue has determined that incorporation of the

5 American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable

6 evidence that the parties agreed to arbitrate arbitrability."); *Contec Corp. v. Remote Sol., Co.*, 398

7 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules

8 that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and

9 unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

10    Here, the threshold questions of whether the parties have agreed to arbitrate, whether that

11 provision is enforceable, and whether it encompasses the instant dispute, are issues expressly

12 delegated to the arbitrator under the Stock Option Plan's arbitration provision.  The arbitration

13 provision at issue is governed by "the J.A.M.S./Endispute Comprehensive Arbitration Rules and

14 Procedures." (Stock Option Plan, Section 16 ¶ (a).)  Pursuant to Rule 11 of the JAMS Arbitration

15 Rules, "Jurisdictional and arbitrability disputes, ***including disputes over the formation, existence,***

16 ***validity, interpretation or scope of the agreement under which Arbitration is sought*** . . . shall be

17 submitted to and ruled on by the Arbitrator." (JAMS Arbitration Rules, Rule 11.)  In light of this

18 unmistakable language, as the Ninth Circuit has explained, "incorporation of the Judicial Mediation

19 and Arbitration Services (JAMS) Rules clearly and unmistakably evidences the parties' intention

20 to delegate issues of arbitrability to the arbitrator." *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465,

21 466–67 (9th Cir. 2021) (unpublished); *see also Caviani v. Mentor Graphics Corp.*, 2019 WL

22 4470820, at *4 (N.D. Cal. Sept. 18, 2019) (compelling issues of arbitrability to the arbitrator

23 because "[w]hen a signed arbitration agreement includes a reference to specific arbitration rules—

24 e.g., AAA, JAMS, etc.—the Ninth Circuit has held that the parties agreed to delegate arbitrability

25 itself to the arbitrator.").   Thus, if Plaintiff challenges the formation, existence, validity,

26 interpretation or scope of the Stock Option Plan's arbitration provision, the Court should

27 nevertheless compel arbitration and leave those issues for the arbitrator to resolve.

28

1

2

**C.      Even If the Court Rejects the Unmistakable Delegation of Authority to Determine Arbitrability, Plaintiff is Bound to Arbitrate His Claim**

3

4

5

If the Court rejects the delegation of authority to the arbitrator to resolve issues of formation, existence, and validity, Plaintiff is bound to arbitrate his claim because a valid agreement to arbitrate exists and it encompasses the present dispute.

6

7

**1.      A valid agreement to arbitrate exists between plaintiff and defendant because it was incorporated by reference into the Advisor Agreement.**

8

9

10

11

12

13

14

15

Plaintiff is bound by the Stock Option Plan's arbitration provision because the Stock Option Plan is explicitly incorporated by referenced in the Advisor Agreement attached as Exhibit "A" to Plaintiff's complaint.  When determining whether a valid contract to arbitrate exists—against the backdrop of the FAA's liberal policy in favor of arbitration—the court must "apply ordinary state law principles that govern contract formation."  *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014).  Here, the Advisor Agreement is controlled by New York law and, thus, New York contract law controls the question to what extent other documents are incorporated by reference into the Advisor Agreement.  (Compl., Ex. A at ¶ 7.)

16

17

18

19

20

21

22

23

New York state law widely recognizes the doctrine of incorporation by reference.  Thus, it is well established "that a broadly-worded arbitration clause . . . may be effectively incorporated by reference into another agreement."  *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993) (collecting authority); *Fed. Ins. Co. v. Metro. Transportation Auth.*, 785 F. App'x 890, 891 (2d Cir. 2019) (observing same); *Consolidated Precision Prod. Corp. v. Gen. Elec. Co.*, No. 15-CV-8721 (PKC), 2016 WL 2766662, at *4 (S.D.N.Y. May 12, 2016) (finding that arbitration provision was incorporated by reference).  This conclusion is in accord with other jurisdictions.[2]

24

25

26

27

28

---

[2] *See, e.g.*, *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (compelling arbitration because it was "undisputed that each Plaintiff is a party to a Provider Agreement with Caremark or CaremarkPCS.  The Provider Agreement, incorporating the Provider Manual by reference, includes an arbitration clause, pursuant to which the Plaintiffs agreed to arbitrate."); *R.J. O'Brien & Associates, Inc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir. 1995) (party was bound to arbitrate where his membership application incorporated by reference the requirements of the organization, including a duty to arbitrate disputes among and between members); *Erickson v. Thrivent Ins. Agency Inc.*, 231 F. Supp. 3d 324, 334 (D.S.D. 2017) (compelling arbitration because

1    For example, in *Consolidated Precision Production* the district court found that a valid

2    agreement to arbitrate existed because the parties indisputably entered a master supply agreement

3    expressly incorporating "standard terms and conditions of purchase" that included an arbitration

4    provision. *Consolidated Precision Production*, 2016 WL 2766662 at *4. To avoid arbitration, the

5    plaintiff argued that based on this language there was no way for the court to conclude "that the

6    Supply Agreements incorporated the Terms and Conditions that include the arbitration clause at

7    issue here." *Id.* In rejecting this argument, the district court characterized the plaintiff's position

8    as "self-serving speculation" that was contradicted by its own complaint and exhibits. The court

9    noted that the complaint exhibits "expressly provide that the Master Supply Agreements

10   incorporate the parties' Terms and Conditions, which [in turn] provide that disputes arising

11   thereunder are to be submitted to binding arbitration administered by the AAA." *Id.* Similarly, in

12   *Federal Insurance Co. v. Metropolitan Transportation Authority*, 2018 WL 5298387, at *4

13   (S.D.N.Y. Oct. 25, 2018), *aff'd*, 785 F. App'x 890 (2d Cir. 2019), the district court compelled

14   arbitration because a bond contract without an arbitration provision incorporated another agreement

15   with an arbitration provision "as though herein set forth in full." *Id.* Because the bond contract

16   contained "no language limiting that incorporation," the court concluded that the bond incorporated

17   the contact and its arbitration provision. *Id.*

18   The same result follows here. The Advisor Agreement, which Plaintiff claims is the basis

19   for his claims against Katapult and is attached as an exhibit to his complaint, expressly provides

20   that Plaintiff's stock options are "subject to vesting ratably over 36 months with 100% of the

21   unvested shares subject to acceleration in the event of a change in control of the Company, ***as well***

22   ***as the other terms of the Company's Stock Option Plan***[.]" (Compl., Ex. A (emphasis added).)

23   Just as in *Consolidated Precision* and *Metropolitan Transportation Authority*, the inescapable

24   conclusion is that this language incorporates by reference the other terms of Katapult's Stock

the original contract contained a provision stating that plaintiff was bound by later amendments to
the bylaws, and a subsequent amendment included an arbitration provision); *LDF Constr., Inc. v.
Texas Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 731 (Tex. App. 2015) (compelling
arbitration because dispute was based on an agreement incorporating an American Institute of
Architects form titled "General Conditions of the Contract for Construction" that provided for
arbitration).

1   Option Plan without limitation.  Indeed, without the Stock Option Plan's terms, the alleged option

2   award would be unenforceable due to uncertainty because the Advisor Agreement—standing

3   alone—is devoid of material terms.  *See Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316,

4   325 (S.D.N.Y. 2001) (applying New York law and holding "there is no manifestation of mutual

5   assent to the material terms of any stock option arrangement including: how many options might

6   be granted of what class of stock; when the options might be granted; the option term; the exercise

7   price; and the expiration date.").  Thus, because Section 16 of the Stock Option Plan contains an

8   arbitration provision, that provision applies with full force to any dispute relating to the Advisor

9   Agreement.  Plaintiff cannot attach the Advisor Agreement to his complaint, claim that certain

10  provisions have breached, and in the same breath act as though the portion of this same agreement

11  incorporating the Stock Option Plan has no meaning.  *See Consolidated Precision Production*, 2016

12  WL 2766662 at *4.

13          Even if the Court elected to apply California law, the result would be no different.

14  California, like New York, also broadly recognizes that arbitration provisions may be incorporated

15  by reference into separate contracts.  And, like New York, in California "[a]n agreement need not

16  expressly provide for arbitration, ***but may do so in a secondary document which is incorporated***

17  ***by reference***."  *Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*, 6 Cal. App. 4th

18  1266, 1271 (1992) (emphasis added); *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748

19  (1994) (reversing order denying motion to compel arbitration because provision was incorporated

20  by reference and "[u]nder California law, parties may validly incorporate by reference into their

21  contract the terms of another document.").  Here, as permitted under California law, the Advisor

22  Agreement expressly incorporates the terms of the Stock Option Plan, which in turn contains the

23  applicable arbitration provision.[3]  That provision, therefore, must also be given its full force even

24  if interpreted under California contract principles.  *See Slaught*, 25 Cal. App. 4th at 748.

25

26  [3] As with New York law, under California law the Advisor Agreement's options award would be
    unenforceable without the material terms contained in the Stock Option Plan.  *See, e.g.*, *Bustamante*

27  *v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209, 45 Cal. Rptr. 3d 692, 699 (2006) ("Where a contract is
    so uncertain and indefinite that the intention of the parties in material particulars cannot be

28  ascertained, the contract is void and unenforceable.").

DLA Piper LLP (US)

-10-

1

### 2.      The Stock Option Plan's arbitration provision is valid and enforceable.

Plaintiff cannot plausibly assert that the arbitration provision in the Stock Option Plan is otherwise invalid.  Arbitration provisions may be invalid if they are procured by fraud, duress, or are otherwise deemed unconscionable.  *See, e.g.*, *Doctor's Associates., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  But, here, Plaintiff's complaint contains no allegation that even mentions the arbitration provision, let alone an allegation that the clause was procured by fraud, duress, or unconscionability.  Indeed, Plaintiff—who characterizes himself as sophisticated executive and consultant in the financial technology industry—specifically seeks to enforce other provisions of the Advisor Agreement.  *See Caviani*, 2019 WL 4470820 at *5 (rejecting challenge to arbitration provision, in part, because the "Plaintiff herein is sophisticated.  Plaintiff is a well-versed businessman, an MBA-program attendee, fluent in English, and had a 15-year history of business dealings.").  He therefore cannot, at the same time, claim that other provisions of the Advisor Agreement that are incorporated by reference were procured unlawfully.

### 3.      The Stock Option Plan's arbitration provision encompasses Plaintiff's claims.

The arbitration provision also unquestionably encompasses Plaintiff's claims.  To require arbitration, a plaintiff's "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor or arbitrability." *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 721 (9th Cir. 1999).  Plaintiff's claims not only "touch matters" covered by the Stock Option Plan's arbitration provision, they are explicitly centered on them.  The arbitration provision encompasses "any dispute arising out of or relating to this Plan or any Award made hereunder, or any agreement executed in connection herewith, or the breach, termination or validity of this Plan, any such Award or any such agreement[.]"  (Stock Option Plan, Section 16 ¶ (a).)  At bottom, each of Plaintiff's claims is premised on the notion that he earned stock options pursuant to the Advisor Agreement "as well as the other terms of the Company's Stock Option Plan," but he never received that award.  (*See* Compl., *passim* and Ex. A.)  Thus, the factual basis for his claims falls squarely within the Stock Option Plan's arbitration provision.

28

DLA Piper LLP (US)

1
2

**D.      This Proceeding Should Be Dismissed or Stayed Pending Arbitration of the Claims.**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Each of Plaintiff's claims is arbitrable and each fall squarely within the scope of the Stock Option Plan's arbitration clause.  Accordingly, because all of Plaintiff's claims can be—and indeed must be—resolved through arbitration, Katapult respectfully submits that dismissal of the action is appropriate.  Whereas here, all claims are subject to arbitration and there does not appear to be anything left for the Court to resolve once arbitration is completed, dismissal is appropriate.  *See, e.g.*, *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1060 (9th Cir.2004) (holding that the district court properly exercised its discretion in dismissing an action where all claims were subject to arbitration.); *Sparling v. Hoffman Const. Co*., 864 F.2d 635, 638 (9th Cir. 1988) (dismissal was proper because "the arbitration clause was broad enough to bar all of the plaintiff's claims since it required Active to submit all claims to arbitration"); *Monzon v. Southern Wine & Spirits of California*, 2011 WL 2884884, at *7 (N.D. Cal. Jul. 19, 2011) ("Because all of Plaintiff's claims are within the scope of the arbitration agreement and the agreement is valid and enforceable, Plaintiff's claims are barred [and] dismissal is therefore appropriate."); *Burnett v. Macy's West Stores, Inc*., 2011 WL 4770614, at *5 (E.D. Cal. Oct. 7, 2011) (holding that dismissal is appropriate when all claims asserted by the plaintiff must be arbitrated).  Alternatively, the Court may stay this proceeding pending the completion of arbitration.  *See* FAA, § 3.

19

**V.      CONCLUSION**

20
21
22
23

For the foregoing reasons, Defendant Katapult respectfully requests that this Court issue an order compelling Plaintiff to arbitrate the entire controversy raised by his complaint and dismissing or staying all judicial proceedings pending the completion of such arbitration and granting such other relief as is just and proper.

24

Dated: July 27, 2021                   DLA PIPER LLP (US)

25
26
27
28

By: */s/ Lupe R. Laguna*
　　MICHAEL D. HYNES
　　LUPE R. LAGUNA
　　Attorneys for Defendant
　　Katapult Group, Inc.

DLA PIPER LLP (US)

-12-

1

## PROOF OF SERVICE

2

I, Selena L. Paradee, declare:

3

I am a citizen of the United States and employed in Sacramento, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is DLA Piper LLP (US), 400 Capitol Mall Suite 2400, Sacramento, California 95814-4428.  On July 27, 2021, I served a copy of the within document(s):

4

5

6

DEFENDANT KATAPULT GROUP, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS, OR ALTERNATIVELY STAY, PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

7

8

9

[X]   (BY ELECTRONIC SERVICE VIA ECF FILING)  The document was served when electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

10

11

[X]   (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

12

13

Arthur Fels
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Email: afels@loeb.com

14

15

16

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

17

18

Executed on July 27, 2021, at Sacramento, California.

19

_____
Selena L. Paradee

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)

-13-