LOEB & LOEB LLP
CHRISTIAN D. CARBONE (New York Bar No. 2825560)
ccarbone@loeb.com
ARTHUR FELS (SBN 294802)
afels@loeb.com
Two Embarcadero Center, Suite 2320
San Francisco, CA  94111
Telephone: 415.903.3200
Facsimile: 415.903.3201

Attorney for Plaintiff
ANDREW WEINSTEIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ANDREW WEINSTEIN,<br><br>                    Plaintiff,<br>        v.<br><br>KATAPULT GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.: 3:21-cv-05175-AGT<br><br>Hon. Phyllis J. Hamilton<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S (1) MOTION TO COMPEL ARBITRATION AND DISMISS, OR ALTERNATIVELY STAY, PROCEEDINGS, AND (2) REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN**<br><br>Date:       October 7, 2021<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 3 – 3rd Floor<br>               Ronald V. Dellums Federal<br>               Building & U.S. Courthouse<br><br>Complaint: April 12, 2021<br>Removal:   July 6, 2021<br>Trial:          Not Set |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND ISSUES TO BE DECIDED. ............................................. 1

II. FACTUAL BACKGROUND. ................................................................................ 2

III. WEINSTEIN DID NOT AGREE TO ARBITRATE. ............................................. 4

    A. The Court Cannot Compel Arbitration Unless Katapult Establishes the Existence of an Arbitration Agreement by a Preponderance of the Evidence, with Weinstein Receiving the Benefit of All Reasonable Doubts and Inferences. ............................................................. 4

    B. Katapult has Failed to Establish that the Parties Agreed to Arbitrate This Dispute because the 2014 Stock Incentive Plan is Not Subject to Judicial Notice. ................................................................................................ 5

    C. Katapult Has Failed to Establish by a Preponderance of the Evidence that the Parties Agreed to Arbitrate This Dispute. ........................ 7

IV. CONCLUSION ...................................................................................................... 8

i

21066253
233203-10002

OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alarcon v. Vital Recovery Servs.*,
706 F. App'x 394 (9th Cir. 2017) ........................................................................................... 5

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ................................................................................................ 5

*Consolidated Precision Prod. Corp. v. Gen. Elec. Co.*,
No. 15-CV-8721 (PKC), 2016 WL 2766662 (S.D.N.Y. May 12, 2016) ........................ 7

*Goldman Savs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) .................................................................................................. 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .............................................................................................................. 5

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .................................................................................................................. 4

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ............................................................................................ 5, 6

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ................................................................................................ 4

*Mohamed v. Uber technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016) ................................................................................................ 4

*Norcia v. Samsung Telcoms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ................................................................................................ 5

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .................................................................................................. 6

*Sugerman v. MCY Music World, Inc.*,
158 F.Supp.2d 316 (S.D.N.Y. 2001) ...................................................................................... 8

*Three Valleys Mun. Water Dist. V. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) ............................................................................................ 5, 7

ii

21066253
233203-10002

OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

**Statutes**

Federal Arbitration Act ................................................................................................................. 4

**Other Authorities**

Fed. R. Evid. 901 ......................................................................................................................... 6

iii

21066253
233203-10002

OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

## I. INTRODUCTION AND ISSUES TO BE DECIDED.

Plaintiff Andrew Weinstein brought this action for damages for defendant Katapult Group, Inc.'s refusal to honor stock options he was promised under a written Advisor Agreement. That agreement – the only signed contract between the parties – does not contain or even reference an arbitration clause. Katapult now comes to this Court with an undated, unsigned, and unauthenticated document titled "2014 Stock Incentive Plan" that is not even referenced in the parties' signed contract, and asks the Court to (i) take judicial notice of this purported plan and (ii) then enforce its arbitration provision.

Katapult's Motion to Compel Arbitration and Dismiss, or Alternatively Stay, Proceedings (the Motion) is frivolous on its face and should be denied in its entirety.

*First*, Katapult has failed to establish the parties ever even agreed to arbitrate because the unsigned and unauthenticated 2014 Stock Incentive Plan is not referenced in the parties' contract and was never even presented to Weinstein, much less accepted.

*Second,* at minimum, Katapult's Motion should be denied because there are genuine questions of fact concerning Weinstein's agreement to be bound by the 2014 Stock Incentive Plan. Weinstein entered the Advisor Agreement as a stand-alone contract and fully performed thereunder. Katapult never professed to rely on any other alleged agreements until Weinstein attempted to exercise the options granted to him by Katapult under the Advisor Agreement.

Katapult attempts to avoid these defects in the Motion by encouraging the Court to delegate its authority to determine arbitrability, including the existence of an arbitration agreement between the parties, to arbitration. Doing so here would be improper according to applicable law and basic common sense. A party cannot produce an unauthenticated, unsigned, and never-before-seen arbitration agreement not referenced in any contract between the parties, then avoid answering a lawsuit because that document purports to delegate arbitrability to arbitration.

Weinstein respectfully requests the Motion be denied.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

1
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

## II. FACTUAL BACKGROUND.

Andrew Weinstein is an entrepreneur, business leader, and investor with over 15 years of experience in the convergence of financial technology, mobility, and the future of commerce. Declaration of Andrew Weinstein (Weinstein Decl.), ¶ 2. He has founded several successful startups in the financial technology space, including Sequent Software, Inc. and, most recently, MyMo Financial. *Ibid*. Since 2012, Weinstein has provided strategic consulting, business development, corporate development, and advisory services to financial services firms, financial technology startups, and corporations requiring assistance with payment solutions. *Ibid*.

Katapult is the successor to Cognical, Inc., a New York based financial technology startup. *Id*., ¶ 3. Through a product originally known as *Zibby*, Cognical provided lease-to-own programs to online and brick-and-mortar retailers. *Ibid*. Cognical envisioned *Zibby* as an alternative payment option that would allow non-prime customers access to online shopping directly through retailers' digital checkout process. *Ibid*. Cognical rebranded *Zibby*, and itself, as "Katapult" in 2020. *Ibid*.

In 2015, Cognical was experiencing severe cash flow problems. *Ibid*. Brandon Wright, Cognical's then CEO, knew of Weinstein's expertise in emerging financial technology platforms and asked him to work with Cognical as an advisor. *Ibid*. The parties entered into the Advisor Agreement attached as Exhibit A to Weinstein's Complaint. *Id*., ¶ 4. Cognical did not present Weinstein with any document other than the Advisor Agreement and Weinstein understood it to be a stand-alone agreement. *Ibid*.

Under Section 1 of the Advisor Agreement, Weinstein agreed to "serve as an Advisor to the Company and consult with and advise the Company from time to time, at the Company's request." *Ibid*. Weinstein's primary compensation was in the form of non-qualified options to purchase 76,435 shares of Cognical's common stock, vesting ratably over 36 months. *Ibid*. Section 7 of the Advisor Agreement discusses the relief available to the parties in the case of breach and provides that "[t]his is the entire agreement between the parties with respect to the subject matter hereof and no changes or modifications or

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

2
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

waivers to this Agreement shall be effective unless in writing and signed by both parties." *Ibid*.

Weinstein's work under the Advisor Agreement was critical to Cognical's survival. For example, in 2016, Weinstein helped Cognical secure $12.5 million from a Series B investor Weinstein identified and walked through the process from beginning to end. *Id.*, ¶ 5. Weinstein also arranged for Victory Park Capital to replace Cognical's boutique lender, which Weinstein had correctly identified as a serious impediment to Cognical's continued viability. *Ibid*.

The Advisor Agreement remained in place and was not terminated by either party. *Id.*, ¶ 6. Although Cognical never presented Weinstein with the Stock Option Plan referenced in the Advisor Agreement, Weinstein did receive periodic written notifications that his options had been granted and vested. *Ibid*. After Katapult went public through a SPAC[1] in March 2021, Weinstein sought to exercise his options and was told they had somehow been forfeited because he had been required to exercise them within 90 days. *Ibid*. Despite his requests for substantiation of Katapult's claim, the company failed and refused to provide any documentation. *Ibid*. This litigation ensued.

The reason for Katapult's reluctance is now clear. Even assuming the authenticity of the 2014 Stock Incentive Plan Katapult insists is controlling, its claim of a 90-day forfeiture is utter fiction. Under Section 6(a) of the 2014 Stock Incentive Plan, "Stock Options granted under the Plan may be either Incentive Stock Options or Non-Qualified Stock Options." Katapult Group, Inc.'s Request for Judicial Notice in Support of the Motion (RJN), Ex. A at 10. The former "may be granted only to employees of the Company or any subsidiary." *Ibid*. Otherwise, any option "not designated as an Incentive Stock Option or [that] does not qualify as an Incentive Stock option… shall be deemed a Non-Qualified Stock Option." *Ibid*.

---

[1] A Special Purpose Acquisition Company, or SPAC, is a company with no commercial operations that is formed strictly to raise capital through an initial public offering for the purpose of acquiring an existing company. SPACs have existed for decades, but have recently become more popular.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

3
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

Weinstein has never been an employee of Katapult or its predecessor. *Id.*, ¶ 7. Therefore, he received only non-qualified stock options under the Advisor Agreement. The term of non-qualified stock options under the 2014 Stock Incentive Plan is governed by Section 6(b)(ii), which provides the "[t]he term of each Stock Option shall be fixed by the Committee, but no Stock Option shall be exercisable more than 10 years after the date the Stock Option is granted." RJN, Ex. A at 11.

Weinstein earned his options in and after 2015 and he is aware of no "Committee" decision to fix the term of his options at less than 10 years. Weinstein Decl., ¶ 7. Therefore, Weinstein's options remained valid and enforceable when he attempted to exercise them, even under the 2014 Stock Incentive Plan.

### III.     WEINSTEIN DID NOT AGREE TO ARBITRATE.

#### A.     The Court Cannot Compel Arbitration Unless Katapult Establishes the Existence of an Arbitration Agreement by a Preponderance of the Evidence, with Weinstein Receiving the Benefit of All Reasonable Doubts and Inferences.

It is axiomatic that an order compelling arbitration must be premised on a finding that the parties agreed to arbitrate in the first place. Katapult asks the Court to skip that crucial first step and reflexively compel arbitration based on Katapult's presentation of an unauthenticated and unsigned document that happens to contain the word "arbitration." The law does not support any such result.

While courts should generally recognize a "liberal policy favoring arbitration agreements" consistent with the Federal Arbitration Act, "[t]he question of whether the parties have submitted a particular dispute to arbitration" is "an exception to this policy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Mohamed v. Uber technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) ("the federal policy in favor of arbitration does not extend to deciding questions of arbitrability.") The Court must determine (1) "whether there is an agreement to arbitrate between the parties," and (2) "whether the agreement covers the dispute" before compelling arbitration. *Lifescan, Inc. v.*

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

4
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

*Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

Parties may delegate these "gateway" issues to the arbitrator, "so long as the agreement does so by clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). But, when litigants dispute the formation or existence of the arbitration agreement itself, there may be no contract to enforce and no such delegation is possible. "To be sure, before referring a dispute to the arbitrator, the court determines whether a valid arbitration agreement exists." *Id*.

In determining issues relating to formation, the court applies "general state-law principles of contract interpretation" (*Goldman Savs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)) and the party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

The party opposing arbitration is entitled to the "benefit of all reasonable doubts and inferences," and the Court may find an agreement to arbitrate exists as a matter of law "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Three Valleys Mun. Water Dist. V. E.F. Hutton & Co*., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting with approval from *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980)). In other words, "[a] district court should not decide as a matter of law that the parties entered into an agreement to arbitrate when there is a genuine issue of fact concerning the formation of any agreement." *Alarcon v. Vital Recovery Servs.*, 706 F. App'x 394, 394 (9th Cir. 2017).

**B. Katapult has Failed to Establish that the Parties Agreed to Arbitrate This Dispute because the 2014 Stock Incentive Plan is Not Subject to Judicial Notice.**

The Motion relies on the court taking judicial notice of the 2014 Stock Incentive Plan under the incorporation by reference doctrine. In its RJN, Katapult qotes *Knievel v.*

5

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

*ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) for the proposition that this doctrine applies where "plaintiff's claim depends on the contents of a document**…** even though the plaintiff does not explicitly allege the contents of that document in the complaint." (Motion at 2 (emphasis added).) The ellipsis in the quotation skips a key element of the incorporation by reference doctrine, that "***the parties do not dispute the authenticity of the document***." *Knievel*, 393 F.3d at 1076 (emphasis added). This element is critical to the Court's decision whether to take judicial notice pursuant to the incorporation by reference doctrine, which presumes the plaintiff "is on notice of the contents of the document" such that plaintiff's "need for a chance to refute it is greatly diminished." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706, n. 4, (9th Cir. 1998).

Weinstein disputes the authenticity of the 2014 Stock Incentive Plan. First, Weinstein had never seen this document before reviewing Katapult's Motion and has no way to confirm it is what Katapult claims it to be.[2] Second, the Advisor Agreement references a "Stock Option Plan," not a "2014 Stock Incentive Plan." Katapult attempts to conceal this distinction by defining the 2014 Stock Incentive Plan as "the Stock Option Plan" in the RJN and Memorandum of Points and Authorities submitted in support of the Motion. In the Memorandum, Katapult avoids referring to the 2014 Stock Incentive Plan by name entirely, defining it only by citation to "Request for Judicial Notice, Ex. A." (Motion at 3.) Of course, the 2014 Stock Incentive Plan *might* be the Stock Option Plan named in the Advisor Agreement, but Weinstein, having never seen the document before, has no way of confirming its authenticity, and Katapult presents no corroborating evidence whatsoever to the Court in support of the Motion.

Simply put, Katapult has not shown Weinstein was "on notice of the contents of the [2014 Stock Option Plan]," and he must be given "a chance to refute it." *Parrino,* 146 F.3d at 706, n. 4. Therefore, judicial notice is improper and the Motion must be denied.

---

[2] Federal Rule of Evidence 901 sets out how to authenticate evidence in federal court. It provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

6
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

### C. Katapult Has Failed to Establish by a Preponderance of the Evidence that the Parties Agreed to Arbitrate This Dispute.

Katapult's contention that the arbitration agreement in the 2014 Stock Incentive Plan was somehow incorporated into the Advisor Agreement is wholly unsubstantiated. First, the 2014 Stock Incentive Plan is not even referenced in the Advisor Agreement. Second, Weinstein never saw, much less agreed, to its terms. Third, as the party seeking to compel arbitration, Katapult bears the burden of establishing facts to the contrary and has not even attempted to do so.

Weinstein does not dispute that the parties could have incorporated an arbitration agreement into the Advisor Agreement by reference, or that the arbitration agreement in the 2014 Stock Incentive Plan would cover this dispute if applicable. New York law, which controls under the Advisor Agreement, plainly contemplates this outcome when "parties indisputably enter[] into" an agreement "that include[s] an arbitration provision" by incorporation. (Motion at 9, relying on *Consolidated Precision Prod. Corp. v. Gen. Elec. Co.*, No. 15-CV-8721 (PKC), 2016 WL 2766662, at *4 (S.D.N.Y. May 12, 2016).

Pages 8-11 of the Motion (Sections C(1)-(3)) set forth and exhaustively support these uncontroversial legal concepts while dismissing the central question of contract formation without analysis as merely an "inescapable conclusion." However, whether Weinstein actually agreed to the arbitration provision or any other term in the 2014 Stock Incentive Plan remains subject to several genuine questions of fact that preclude the Court from ordering arbitration. *See Three Valleys Mun. Water Dist.*, *supra*, 925 F.2d at 1141 (an agreement to arbitrate is enforceable as a matter of law "[o]nly when there is no genuine issue of facts concerning the formation of the agreement" with the party opposing arbitration entitled to the benefit of "all reasonable doubts and inferences.")

*First*, for the reasons noted above with respect to judicial notice, there are substantial unresolved questions regarding whether the 2014 Stock Incentive Plan is the document referred to as the "Stock Option Plan" in the Advisor Agreement. It has a different name and may have been superseded by July 2015 when Weinstein became an

7

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

advisor to Cognical. Weinstein has never seen the 2014 Stock Incentive Plan and Katapult presents no evidence with the Motion to resolve these discrepancies.

*Second*, Weinstein did not agree to be bound by any agreement other than the Advisor Agreement. He was never presented with the 2014 Stock Incentive Plan or any other document identified as the "Stock Option Plan" referenced in the Advisor Agreement. It is an open question whether Cognical/Katapult shared Weinstein's understanding of the Advisor Agreement as a stand-alone document.

*Third*, the parties to the Advisor Agreement performed fully, until now, without discussing or executing any companion agreements. Katapult's predecessor paid Weinstein in cash and non-qualified options according to the Advisor Agreement without professing to rely on any other documents or making any attempt to present such materials to Weinstein. Katapult also never gave Weinstein notice that his non-qualified options would or had expired.

Giving Weinstein the benefit of all reasonable doubts and inferences regarding these outstanding issues, the Court must conclude that the arbitration provision in the 2014 Stock Incentive Plan is not enforceable against Weinstein for the purposes of this Motion.[3]

## IV. CONCLUSION

For the foregoing reasons, Weinstein respectfully submits that Katapult's Motion

/ / / /

/ / / /

/ / / /

/ / / /

---

[3] Although not strictly at issue in the Motion, the Advisor Agreement contains sufficient material terms to be enforceable. Unlike in *Sugerman v. MCY Music World, Inc.*, 158 F.Supp.2d 316, 325 (S.D.N.Y. 2001), where the court refused to find mutual consent to an option agreement that omitted "how many options might be granted of what class of stock; when the options might be granted; the option term; the exercise price; and the expiration date," the Advisor Agreement contains sufficient terms to be enforced. Indeed, Katapult's predecessor awarded options to Weinstein under the Advisor Agreement every month for two years. The price of the options can be determined readily based on the date of exercise by Weinstein.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

8
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

should be denied and Katapult answer the allegations in Weinstein's Complaint.

Dated:  August 10, 2021                    LOEB & LOEB LLP
                                           CHRISTIAN D. CARBONE
                                           ARTHUR FELS


                                           _____
                                           Arthur Fels
                                           Attorneys for Plaintiff
                                           ANDREW WEINSTEIN

21066253
233203-10002

9
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

**DECLARATION OF ANDREW WEINSTEIN**

I, Andrew Weinstein, declare as follows:

1.  I am the plaintiff in this action and the following is based on my personal knowledge. If called as a witness, I could and would testify competently to these facts under oath. I submit this declaration in opposition to defendant Katapult Group, Inc.'s Motion to Compel Arbitration and Dismiss, or Alternatively Stay, Proceedings and concurrently filed Request for Judicial Notice.

2.  I am an entrepreneur, business leader, and investor with over 15 years of experience in the convergence of financial technology, mobility, and the future of commerce. I have founded several successful startups in the financial technology space, including Sequent Software, Inc. and, most recently, MyMo Financial. Since 2012, I have provided strategic consulting, business development, corporate development, and advisory services to financial services firms, financial technology startups, and corporations requiring assistance with payment solutions.

3.  In mid-2015, Cognical, Inc.'s CEO, Brandon Wright, asked me to work with Cognical as an advisor because of my expertise in emerging financial technology platforms. I understood from my conversations with Mr. Wright at that time that Cognical, a New York based financial technology startup, was experiencing severe cash flow problems and was at risk of failing. Cognical provided lease-to-own programs to online and brick-and-mortar retailers through a product originally known as *Zibby*. Cognical envisioned *Zibby* as an alternative payment option that would allow non-prime customers access to online shopping directly through retailers' digital checkout process. Cognical rebranded *Zibby*, and itself, as "Katapult" in 2020.

4.  In July 2015, Cognical and I entered into an Advisor Agreement, a true and correct copy of which is attached as Exhibit A to my Complaint in this matter. Under Section 1 of the Advisor Agreement, I agreed to "serve as an Advisor to the Company and consult with and advise the Company from time to time, at the Company's request." My primary compensation was in the form of non-qualified options to purchase 76,435 shares

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066253
233203-10002

10
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST
FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

of Cognical's common stock, vesting ratably over 36 months. Section 7 of the Advisor Agreement discusses the relief available to the parties in the case of breach and provides that "[t]his is the entire agreement between the parties with respect to the subject matter hereof and no changes or modifications or waivers to this Agreement shall be effective unless in writing and signed by both parties." Cognical did not present me with any document other than the Advisor Agreement and I understood it to be a stand-alone agreement.

5. My work for Cognical under the Advisor Agreement was critical to Cognical's survival. For example, in 2016, I helped Cognical secure $12.5 million from a Series B investor I identified and walked through the process from beginning to end. I also arranged for Victory Park Capital to replace Cognical's boutique lender, which I had correctly identified as a serious impediment to Cognical's continued viability.

6. The Advisor Agreement remained in place and was not terminated by either party. Cognical never presented me with the "Stock Option Plan" referenced in the Advisor Agreement, but I did receive periodic notifications that my options had been granted and vested. After Katapult went public through a SPAC in March 2021, I reached out to the company to exercise my options. Katapult's representative responded by telling me I had forfeited my options because I did not exercise them within 90 days. I asked Katapult to substantiate its claims, but the company refused to provide any documentation.

7. I have never been an employee of Cognical or Katapult. Nor am I aware of any decision by Cognical or Katapult to fix the term of the options I earned under the Advisor Agreement at less than 10 years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on <u>August 9</u>, 2021, at Ross, California.

Andrew Weinstein

11
21066253
233203-10002
OPPOSITION TO MOTION TO COMPEL ARBITRATION AND REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ANDREW WEINSTEIN

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations