UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WEINSTEIN,<br><br>    Plaintiff,<br><br>    v.<br><br>KATAPULT GROUP, INC.,<br><br>    Defendant. | Case No. 21-cv-05175-PJH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 14 |

Before the court is defendant's motion to compel arbitration. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**I.    BACKGROUND**

This is a contract dispute. Plaintiff Andrew Weinstein, a resident of Ross, California, is a business executive and consultant "focused, among other things, on the convergence of financial technology (fintech), mobility, and the future of commerce." Compl. ¶ 1. Defendant Katapult Group, Inc. ("Katapult"), formerly Cognical d/b/a Zibby, is an online consumer leasing platform for brick-and-mortar and omnichannel retailers. Compl. at ¶ 2. The company is incorporated in Delaware, and its principal place of business is in New York, New York. Compl. ¶ 2

On July 13, 2015, Katapult and plaintiff entered an Advisor Agreement ("the Advisor Agreement") in which plaintiff agreed to provide advising services to the company. Compl. ¶ 6. In addition to cash payments for his services, subject to certain

1  conditions, plaintiff was also entitled to earn "options to purchase 76,435 shares of
2  Company common stock." Compl., Ex. A (Dkt. 1-1 at 11). Plaintiff's stock options are
3  "subject to vesting ratably over 36 months with 100% of the unvested shares subject to
4  acceleration in the event of a change in control of the Company, as well as the other
5  terms of the Company's Stock Option Plan and the applicable form of Stock Option
6  Agreement (to be executed by Advisor)." Compl., Ex. A (Dkt. 1-1 at 11). The Stock
7  Option Agreement mentioned within the Advisor Agreement was never executed by
8  plaintiff. Plaintiff fully performed his obligations under the Advisor Agreement. Compl. ¶
9  7.

On or about December 22, 2020, following acquisition of the company through a special purpose acquisition company that rendered stock in the company more valuable, plaintiff contacted Katapult to learn how he could exercise his options to purchase the 76,435 shares of company stock as provided in the Advisor Agreement. Compl. ¶ 10. The company responded by claiming that "(1) the Advisor Agreement had expired 'many years ago' and (2) the options expired ninety days after termination of the Advisor Agreement." Compl. ¶ 10. Katapult thereafter refused to allow plaintiff to exercise his options to purchase the stock. Comp. ¶ 11. This lawsuit followed.

Procedural History

Plaintiff originally filed this case in the Superior Court of California for the County of Marin on April 12, 2021. Dkt. 1-1. The complaint alleges the following causes of action: (1) breach of contract, (2) declaratory relief, and (3) quantum meruit. Dkt. 1-1. After service of process on June 10, 2021, Katapult removed the action to this court on July 6, 2021, based on diversity jurisdiction. Dkt. 1.

Katapult filed this motion to compel arbitration on July 27, 2021. Dkt. 14. Katapult asks for an order compelling arbitration of plaintiff's claims and an order dismissing all judicial proceedings pending completion of such arbitration. If the court does not entirely dismiss the case, Katapult alternatively requests an order staying the action pending completion of arbitration.

conditions, plaintiff was also entitled to earn "options to purchase 76,435 shares of Company common stock." Compl., Ex. A (Dkt. 1-1 at 11). Plaintiff's stock options are "subject to vesting ratably over 36 months with 100% of the unvested shares subject to acceleration in the event of a change in control of the Company, as well as the other terms of the Company's Stock Option Plan and the applicable form of Stock Option Agreement (to be executed by Advisor)." Compl., Ex. A (Dkt. 1-1 at 11). The Stock Option Agreement mentioned within the Advisor Agreement was never executed by plaintiff. Plaintiff fully performed his obligations under the Advisor Agreement. Compl. ¶ 7.

On or about December 22, 2020, following acquisition of the company through a special purpose acquisition company that rendered stock in the company more valuable, plaintiff contacted Katapult to learn how he could exercise his options to purchase the 76,435 shares of company stock as provided in the Advisor Agreement. Compl. ¶ 10. The company responded by claiming that "(1) the Advisor Agreement had expired 'many years ago' and (2) the options expired ninety days after termination of the Advisor Agreement." Compl. ¶ 10. Katapult thereafter refused to allow plaintiff to exercise his options to purchase the stock. Comp. ¶ 11. This lawsuit followed.

Procedural History

Plaintiff originally filed this case in the Superior Court of California for the County of Marin on April 12, 2021. Dkt. 1-1. The complaint alleges the following causes of action: (1) breach of contract, (2) declaratory relief, and (3) quantum meruit. Dkt. 1-1. After service of process on June 10, 2021, Katapult removed the action to this court on July 6, 2021, based on diversity jurisdiction. Dkt. 1.

Katapult filed this motion to compel arbitration on July 27, 2021. Dkt. 14. Katapult asks for an order compelling arbitration of plaintiff's claims and an order dismissing all judicial proceedings pending completion of such arbitration. If the court does not entirely dismiss the case, Katapult alternatively requests an order staying the action pending completion of arbitration.

## II. DISCUSSION

### A. Legal Standard

Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act ("FAA"), Title 9 U.S.C. §§ 1, et. seq., may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4; Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

In ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. Lifescan, 363 F.3d at 1012; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answers are yes, the court must enforce the agreement. Lifescan, 363 F.3d at 1012.

Regarding whether an agreement exists to arbitrate, the "first principle" that underscores the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." Granite Rock, 561 U.S. at 297 (emphasis in original).

Regarding the validity of the agreement, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

3

Regarding the scope of the agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Nevertheless, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

**B.  Analysis**

**1.  Introduction of the Stock Option Plan**

Plaintiff argues that the court should deny the motion to compel arbitration because defendant failed to authenticate the alleged stock option plan in which the arbitration provision is found. To satisfy the authentication requirement, the proponent must submit evidence "sufficient to support a finding that the item is what the proponent claims it to be." Fed. R. Evid. 901(a). The court may consider testimony that an item is what the proponent claims it to be. Fed. R. Evid. 901(b)(1).

Along with the motion to compel arbitration, Katapult submitted a request for judicial notice ("RJN"), asking the court to take notice of two documents. Katapult describes the first document, RJN Exhibit A, as "the Stock Option Plan" that is referenced by the Advisor Agreement. The descriptive header of the document on the first page is "Cognical, Inc. 2014 Stock Incentive Plan" ("2014 Stock Incentive Plan"). Dkt. 14-1 at 6. Defendant argues that the Advisor Agreement incorporates the 2014 Stock Incentive Plan by reference, and because the 2014 Stock Incentive Plan includes an arbitration provision, this dispute regarding stock options must be submitted to arbitration.

Plaintiff argues that the 2014 Stock Incentive Plan is not subject to judicial notice because he disputes its authenticity. He argues:

> First, Weinstein had never seen this document before reviewing Katapult's Motion and has no way to confirm it is what Katapult claims it to be. Second, the Advisor Agreement references a "Stock Option Plan," not a "2014 Stock Incentive Plan." Katapult attempts to conceal this distinction by defining the 2014 Stock Incentive Plan as "the Stock Option Plan" in the RJN and Memorandum of Points and Authorities submitted in

4

support of the Motion.

Dkt. 20 at 10 (footnote omitted).

Along the reply brief, defendants submit a declaration from Derek Medlin, Katapult's Chief Operating Officer since 2017, certifying that the "2014 Stock Option Plan" was applicable at the time the Advisor Agreement was executed and is the same document as the Stock Options Plan referenced by the Advisor Agreement. Dkt. 21-1 at 2. Exhibit A to the Medlin declaration is "the June 5, 2014 executed Unanimous Written Consent Of The Board Of Directors Of Cognical Inc." (Cognical was Katapult's predecessor), pursuant to which the board unanimously approved the Stock Option Plan. The 2014 Stock Incentive Plan is Exhibit L within that consent document, and its short description is "Option Plan." Dkt. 21-2 at 40-58. Exhibit B to the Medlin declaration "is the June 5, 2014 executed Action By Written Consent Of The Stockholders of Cognical, Inc. In Lieu Of A Meeting," pursuant to which Cognical, Inc.'s stockholders unanimously approved the Stock Option Plan. The Medlin declaration additionally certifies that the document submitted as Exhibit A to defendant's initial request for judicial notice is the same as the Stock Option Plan approved and adopted by both the Cognical Board of Directors and the Cognical stockholders. Medlin Decl. (Dkt. 21-1). Medlin declares further, "The Stock Option Plan is also the same document referenced, and incorporated into, paragraph I.1 of the Advisor Agreement." Medlin Decl. ¶ 6.

Plaintiff filed an objection to the Medlin declaration. Dkt 22. In particular, plaintiff attacks Medlin's certification that the 2014 Stock Incentive Plan is the same document as the Stock Option Plan referenced within the Advisor Agreement because that information is not based on his personal knowledge—Medlin did not join Katapult until after 2015 and was unaffiliated with Cognical at the time the Advisor Agreement was executed. Dkt 22. As a result, he could not have personal knowledge that the 2014 Stock Incentive Plan was the operative document described as the Stock Option Plan in the Advisor Agreement.

Plaintiff additionally objects to the Medlin declaration because it perpetuates a

5

misleading discrepancy by referring repeatedly to the 2014 Stock Incentive Plan as the "Stock Option Plan." Plaintiff describes,

> Exhibit "A" to Mr. Medlin's Declaration, which includes the 2014 Stock Incentive Plan as its own "Exhibit L," also includes references on page 3 to a "Stock Restriction Agreement" and a "Stock Option Agreement." These documents were apparently attached as "Exhibit[s] G-1" and "G-2" to Exhibit "A," but they are omitted without explanation from the version Mr. Medlin attaches to his declaration. The missing documents, or similar materials specifically pertaining to Weinstein, but not referenced in Exhibit "A," are equally plausible candidates for the "Stock Option Plan" in the Advisor Agreement if such a document even exists.

Dkt. 22 at 3.

Here, the Advisor Agreement between Weinstein and Cognical was executed in 2015, while Medlin became COO of Katapult (the successor company to Cognical) in 2017. Medlin does not identify any previous experience with the business prior to the time he became COO. Medlin does not identify how he came to know that the 2014 Stock Incentive Plan is the same Stock Option Plan referenced in the Advisor Agreement, he simply states that this is "unequivocally" true. Medlin Decl. ¶ 3 (Dkt. 21-1 at 2). On this showing, the court agrees with plaintiff that Medlin appears to lack personal knowledge of the Stock Option Plan referenced by a 2015 agreement in place in 2015. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). The discrepancies and numerous stock-related documents noted by plaintiff only highlight the difficulty defendants face in establishing that the 2014 Stock Incentive Plan is what they say it is—the Stock Option Plan referenced in the Advisor Agreement. Therefore, Medlin fails to authenticate the 2014 Stock Incentive Plan based on personal knowledge. The court finds that defendants fail to establish that the 2014 Stock Incentive Plan is the Stock Option Plan referenced in the 2015 Advisor Agreement.

### 2. Intent to Arbitrate Dispute

The FAA reflects both a "'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" AT&T Mobility LLC v.

Concepcion, 563 U.S. 333, 339 (2011) (first quoting Moses H. Cone, Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); then quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." First Options of Chicago, 514 U.S. at 943. Courts apply federal substantive law to questions regarding the interpretation and enforceability of arbitration agreements generally, and state contract law to questions concerning whether the parties agreed to arbitrate. Id. at 944. As a threshold matter, the court must first determine if there is a valid agreement between the parties to arbitrate before it can decide if an agreement is enforceable. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The parties here agree that the Advisor Agreement includes a choice of law provision selecting the law of New York. Compl. Ex. A ¶ 7 (Dkt. 1-1 at 12); Dkt. 14 at 8; Dkt. 20 at 11. Therefore, the issue of whether the parties agreed to arbitrate in their contract is considered under New York law.

Under New York contract law, the incorporation by reference doctrine applies where the material to be incorporated "is so well known to the contracting parties that a mere reference to it is sufficient. The document is required to also be described in the contract such that it is identifiable beyond all reasonable doubt." Maines Paper & Food Serv., Inc. v. Keystone Assocs., 23 N.Y.S.3d 398, 400 (2015) (internal quotation marks and citations omitted); see also PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996). In Maines Paper & Food Service, a supermarket retained an architectural consultant for services and thereafter sued the consultant for performance defects. 23 N.Y.S.3d at 399. The parties had exchanged multiple drafts of their agreement prior to execution, and the final agreement referred to, but omitted, an addendum that included a limitation of liability clause. Id. at 399-400. The Appellate Division of the New York Supreme Court affirmed a denial of summary judgment, holding that the addendum was not incorporated by reference where the version of the addendum referenced was not

sufficiently identified in the executed consulting agreement. Id. at 400.

Here, the Advisor Agreement does not itself include any hint of the parties' intent to arbitrate, and defendant advances that the Advisor Agreement incorporates by reference the Stock Option Plan. Dkt. 1-1 at 11. As noted above, the 2014 Stock Incentive Plan includes an arbitration clause. Dkt. 14-1 at 27. Plaintiff avers in his brief and his declaration that he was never provided with the 2014 Stock Incentive Plan, that defendant's RJN is the first instance of him seeing it. Dkt. 20 at 10, 15. If plaintiff had never previously seen the document to be incorporated by reference, it was not identifiable beyond all reasonable doubt. And as plaintiff notes, the documents attached to the Medlin declaration reveal that there are multiple Cognical/Katapult documents with relatively similar titles that may have served as the Stock Option Plan referenced in the Advisor Agreement. See Dkt. 22 at 3 (noting that Medlin Decl., Ex. A, includes the 2014 Stock Incentive Plan and also refers to a "Stock Restriction Agreement" and a "Stock Option Agreement," but neither of the latter two documents are submitted to the court). These facts add greater uncertainty to the Advisor Agreement's incorporation of the Stock Option Plan than the uncertainty present in Maines Paper. The Advisor Agreement's oblique reference to an otherwise unidentified Stock Option Plan, which was never provided to plaintiff and which is not clearly described by Katapult, is insufficient to meet the exacting standard necessary for incorporation by reference under New York contract law. Therefore, even if the court determined that the 2014 Stock Incentive Plan was properly authenticated, the court determines that it is not incorporated by reference into the Advisor Agreement and thus cannot establish an agreement to arbitrate the parties' dispute.

Courts generally retain authority over the question of arbitrability of a particular dispute, but "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (quoting First Options, 514 U.S., at 944). The 2014 Stock Incentive Plan provides that disputes are to

be resolved by the JAMS Rules (Dkt. 14-1 at 27), and the JAMS Rules provide that the issue of arbitrability is to be resolved by the arbitrator (Dkt. 14-1 at 35).  The parties argue about whether the issue of arbitrability should itself be submitted to arbitration under the JAMS rules, but the court does not reach that argument because of this lack of clear intent to arbitrate in the first instance.

### III. CONCLUSION

For the reasons stated above, including the lack of incorporation by reference of the 2014 Stock Incentive Plan and lack of clear intent to arbitrate, the court DENIES WITHOUT PREJUDICE defendant's motion to compel this action to arbitration. Defendant may renew its motion if additional evidence of the parties' intent to arbitrate is revealed through discovery.  In addition, defendant's request for leave to file a Rule 12 motion is GRANTED.  Such motion or other responsive pleading must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: October 15, 2021

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge