United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW WEINSTEIN,

            Plaintiff,

    v.

KATAPULT GROUP, INC.,

            Defendant.

Case No.  21-cv-05175-PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 35

Defendant's motion to dismiss came on for hearing before this court on January 13, 2022.  Plaintiff appeared through his counsel, Christian D. Carbone and Todd J. Densen.  Defendant appeared through its counsel, Micah A. Chavin.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendant's motion, for the following reasons.

**BACKGROUND**

Plaintiff Andrew Weinstein, a resident of Ross, California, is a business executive and consultant "focused, among other things, on the convergence of financial technology (fintech), mobility, and the future of commerce."  Compl. ¶ 1.  Defendant Katapult Group, Inc. ("Katapult"), formerly Cognical d/b/a Zibby, is an online consumer leasing platform for brick-and-mortar and omnichannel retailers.  Compl. ¶ 2.  The company is incorporated in Delaware, and its principal place of business is in New York, New York. Compl. ¶ 2.

On July 13, 2015, Katapult and plaintiff entered an Advisor Agreement ("the Advisor Agreement") in which plaintiff agreed to provide advising services to the

1
2
3
4
5
6
7
8
9
10

company.  Compl. ¶ 6.  In addition to cash payments for his services, subject to certain conditions, plaintiff was also entitled to earn "options to purchase 76,435 shares of Company common stock."  Compl., Ex. A (Dkt. 1-1 at 11).  Plaintiff's stock options were "subject to vesting ratably over 36 months with 100% of the unvested shares subject to acceleration in the event of a change in control of the Company, as well as the other terms of the Company's Stock Option Plan and the applicable form of Stock Option Agreement (to be executed by Advisor)."  Compl., Ex. A (Dkt. 1-1 at 11).  The Stock Option Agreement mentioned within the Advisor Agreement was never executed by plaintiff.  Plaintiff fully performed his obligations under the Advisor Agreement.  Compl. ¶ 7.

11
12
13
14
15
16
17
18

On or about December 22, 2020, following acquisition of the company through a special purpose acquisition company that rendered stock in the company more valuable, plaintiff contacted Katapult to learn how he could exercise his options to purchase the 76,435 shares of company stock as provided in the Advisor Agreement.  Compl. ¶ 10. The company responded by claiming that "(1) the Advisor Agreement had expired 'many years ago' and (2) the options expired ninety days after termination of the Advisor Agreement."  Compl. ¶ 10.  Katapult thereafter refused to allow plaintiff to exercise his options to purchase the stock.  Comp. ¶ 11.

19

Procedural History

20
21
22
23
24

Plaintiff originally filed this case in the Superior Court of California for the County of Marin on April 12, 2021.  Dkt. 1-1.  The complaint alleges the following causes of action: (1) breach of contract, (2) declaratory relief, and (3) quantum meruit.  Dkt. 1-1. After service of process on June 10, 2021, Katapult removed the action to this court on July 6, 2021, based on diversity jurisdiction.  Dkt. 1.

25
26
27
28

After removal and before responding to the complaint, defendant moved to compel arbitration.  Dkt. 14.  The court denied that motion, finding that defendant had failed to clearly establish that the parties assented to arbitrate.  Dkt. 28.  Defendant requested leave to file a 12(b) motion responding to the complaint in case the motion to compel

1    arbitration was denied, and the court granted this request in its order of denial.  Dkt. 28 at

2    9.  Defendant now asks the court to dismiss the complaint for failure to state a claim.

3    Dkt. 35.

**DISCUSSION**

**A.    Legal Standard**

6        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

7    legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d

8    1191, 1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.

9    Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).

10   To survive a motion to dismiss for failure to state a claim, a complaint generally must

11   satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure

12   8, which requires that a complaint include a "short and plain statement of the claim

13   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

14       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

15   plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to

16   support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

17   (9th Cir. 1988).  The court is to "accept all factual allegations in the complaint as true and

18   construe the pleadings in the light most favorable to the nonmoving party."  Outdoor

19   Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

20       However, legally conclusory statements, not supported by actual factual

21   allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The

22   allegations in the complaint "must be enough to raise a right to relief above the

23   speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

24   and quotations omitted).  A claim has facial plausibility when the plaintiff pleads factual

25   content that allows the court to draw the reasonable inference that the defendant is liable

26   for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).  In the event

27   dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

28   cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  Cir. 2005).

2      Review is generally limited to the contents of the complaint, although the court can

3  also consider a document on which the complaint relies if the document is central to the

4  claims asserted in the complaint, and no party questions the authenticity of the

5  document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may

6  consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393

7  F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th

8  Cir. 2001), and exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard

9  Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents

10  referenced extensively in the complaint and documents that form the basis of a the

11  plaintiff's claims.  See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W.

12  Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

13  **B.    Analysis**

14      **1.    Choice of law**

15      "A federal court sitting in diversity must look to the forum state's choice of law rules

16  to determine the controlling substantive law."  Mazza v. Am. Honda Motor Co., 666 F.3d

17  581, 589 (9th Cir. 2012) (quoting Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

18  1187 (9th Cir. 2001)).  When an agreement includes a choice of law clause, California

19  courts apply the following two-pronged test to determine its enforceability: "(1) whether

20  the chosen state has a substantial relationship to the parties or their transaction, or (2)

21  whether there is any other reasonable basis for the parties' choice of law."  Williams v.

22  Facebook, Inc., 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018) (quoting Washington Mut.

23  Bank, FA v. Superior Court, 24 Cal.4th 906, 916 (2001)).  If either prong is met, the

24  choice of law clause will be enforced unless "contrary to a fundamental policy" of the

25  alternative state and if the state "has a materially greater interest in the determination of

26  the particular issue."  Washington Mut. Bank, 24 Cal.4th at 917.

27      Here, the Advisor Agreement appended to the complaint includes a choice of law

28  provision.  Dkt. 1-1 at 12 ("This Agreement shall be governed by and construed in

4

United States District Court
Northern District of California

1    accordance with the laws of the State of New York without regard to the conflicts of law

2    provisions thereof.").  And further, both prongs of California's choice of law test are met.

3    New York has an obvious substantial relationship to the parties given defendant's primary

4    place of business.  The parties do not dispute the applicability of New York contract law

5    to the dispute at issue, and they identify no fundamental policy that would be contravened

6    by applying New York law.  Therefore, the court applies New York contract law to the

7    dispute involving the Advisor Agreement.

8        **2.    Breach of Contract**

9        To establish a claim for breach of contract under New York law, a plaintiff must

10   allege: (1) the existence of a contract; (2) adequate performance of the contract by

11   plaintiff; (3) defendant's breach of the contract; and (4) damages.  Red Fort Capital, Inc.

12   v. Guardhouse Productions, LLC, 397 F. Supp. 3d 456, 477-78 (S.D.N.Y. 13, 2019).

13   The only element the parties appear not to dispute at this point is that plaintiff performed

14   under the terms of the Advisor Agreement.  The parties dispute whether there was an

15   enforceable contract, whether defendant fulfilled its obligations, and what, if any,

16   damages are owed.

17       **a.    Indefiniteness**

18       "To create a binding contract, there must be a manifestation of mutual assent

19   sufficiently definite to assure that the parties are truly in agreement with respect to all

20   material terms."  Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 93

21   N.Y .2d 584, 589 (1999).  "If an agreement is not reasonably certain in its material terms,

22   there can be no legally enforceable contract."  Cobble Hill Nursing Home, Inc. v. Henry

23   and Warren Corp., 74 N.Y.2d 475, 482 (1989).  Moreover, an agreement in which there is

24   "'no way to tell from the face of the document how to establish' missing material terms . . .

25   is unenforceable."  Sugerman v. MCY Music World, Inc., 158 F.Supp.2d 316, 324

26   (S.D.N.Y. 2001) (quoting Express Indus. & Terminal Corp., 93 N.Y.2d at 590).  A contract

27   offering an option award must indicate the "material terms of any stock option

28   arrangement, including: how many options might be granted of what class of stock; when

5

1    the options might be granted; the option term; the exercise price; and the expiration

2    date." Sugerman, 158 F. Supp. 2d at 325; see also Christian v. TransPerfect Glob., Inc.,

3    No. 17-CV-5554 (PKC), 2018 WL 4571674, at *7 (S.D.N.Y. Sept. 24, 2018) ("In the case

4    of a promise for equity in a business, the promise must convey the nature of the

5    obligation, including the amount, the timing, and the source of payment.").

6            Here, the parties dispute whether the Advisor Agreement's failure to specify

7    certain terms regarding the stock options renders the contract ambiguous or indefinite.

8    Defendant emphasizes, relying on Sugerman, that the Advisor Agreement lacks the

9    option term, the exercise price, and the expiration date of the options and only generally

10   refers to a Stock Option Plan to be separately executed.  Though plaintiff argues that the

11   Stock Option Plan may provide the missing definitions, defendant is correct that the

12   missing terms, essential to an option award, are lacking from the face of the complaint

13   and the document appended to it.  The Advisor Agreement is insufficiently definite where

14   the material terms of the option award cannot be determined objectively without the need

15   for new expressions by the parties.  See Cobble Hill, 74 N.Y.2d at 483.  Therefore,

16   plaintiff fails to plead a valid contract supporting his cause of action for breach of contract,

17   and the court grants dismissal of the breach of contract cause of action on this ground.

18   The court dismisses this cause of action with leave to amend, however, because plaintiff

19   may plead the existence of a stock plan that provides such essential terms, if one exists.

20                  **b.      "Agreement to agree"**

21           An "agreement to agree, in which a material term is left for future negotiations, is

22   unenforceable." Doller v. Prescott, 167 A.D.3d 1298, 1300 (2018) (quoting Joseph

23   Martin, Jr., Delicatessen v. Schumacher, 52 N.Y.2d 105, 109 (1981)).  In Doller, the

24   Appellate Division affirmed dismissal of a breach of contract claim related to an option

25   agreement where "the parties left open for future negotiation both the type of equity and

26   the 'precise manner' in which that equity would be offered."  Id. at 109.

27           Here, plaintiff's stock options are "subject to vesting ratably over 36 months with

28   100% of the unvested shares subject to acceleration in the event of a change in control of

                                              6

1  the Company, as well as the other terms of the Company's Stock Option Plan and the

2  applicable form of Stock Option Agreement (*to be executed by Advisor*)."  Compl., Ex. A

3  (Dkt. 1-1 at 11) (emphasis added).  Though plaintiff argues that the language of the

4  Advisor Agreement leaves nothing for future negotiation, this is exactly what it does—the

5  Advisor is to execute a subsequent agreement, the applicable form of Stock Option

6  Agreement.  The Advisor Agreement thus leaves material terms (e.g., option term,

7  exercise price, as described above) to be set in a separate, future agreement.  Therefore,

8  as pleaded, the Advisor Agreement constitutes an unenforceable "agreement to agree"

9  as to the stock option award, and the court alternatively grants dismissal of the breach of

10  contract cause of action on this basis.

11         **3.     Quantum Meruit**

12         In order to recover in quantum meruit under New York law, a claimant must

13  establish "(1) the performance of services in good faith, (2) the acceptance of the

14  services by the person to whom they are rendered, (3) an expectation of compensation

15  therefor, and (4) the reasonable value of the services."  Revson v. Cinque & Cinque,

16  P.C., 221 F.3d 59, 69 (2d Cir. 2000) (citation and internal quotation marks omitted).

17  "New York law does not permit recovery in quantum meruit, however, if the parties have

18  a valid, enforceable contract that governs the same subject matter as the quantum meruit

19  claim."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d

20  168, 175 (2d Cir. 2005) (citing Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70

21  N.Y.2d 382, 388 (1987)).

22         While New York law recognizes that a plaintiff cannot ultimately recover on both a

23  quasi-contract claim and a breach of contract claim,

> at an early stage in litigation, it may be possible to plead both
> in the alternative -- provided there is (1) a bona fide dispute
> about the existence of a contract, (2) a bona fide dispute about
> whether the contract covers the full scope of a plaintiff's
> allegations, or (3) a bona fide dispute about the validity of the
> contract.

Gemma Power Sys., LLC v. Exelon W. Medway II, LLC, No. 19 CIV. 00705 (CM), 2019

7

1    WL 3162088, at *12 (S.D.N.Y. July 1, 2019) (cleaned up).  The existence of a valid

2    contract otherwise bars a plaintiff's claim for quantum meruit relief.  <u>Fine Host Corp.</u>, 418

3    F.3d at 175.

4    Here, defendant argues that plaintiff cannot have it both ways, that the Advisor

5    Agreement constitutes an enforceable contract that has been breached and that plaintiff

6    performed under quasi-contract.  However, parties are plainly permitted to plead in the

7    alternative.  <u>See</u> Fed. R. Civ. Pro. 8(d)(2).  Plaintiff may not ultimately prevail on both the

8    breach of contract and quantum meruit claims, but at this early stage of litigation, he is

9    permitted to proceed on both in the alternative.  Therefore, the court denies dismissal of

10   the quantum meruit claim based on the contrast between the contract and quasi-contract

11   claims.

12        **4.       Declarative Relief**

13   Declaratory relief is not a standalone cause of action.  <u>Mayen v. Bank of America</u>

14   <u>N.A.</u>, 2015 WL 179541, at *5 (N.D. Cal. 2015) ("[D]eclaratory relief is not a standalone

15   claim."); 28 U.S.C. § 2201(a) (a federal court may only award declaratory relief "[i]n a

16   case of actual controversy within its jurisdiction").

17   Plaintiff does not dispute that the court should dismiss the declaratory relief claim if

18   it dismisses the breach of contract and quantum meruit claims.  Dkt. 39 at 14 n.8.  Based

19   on the dismissal of the breach of contract claim above, the court also dismisses the claim

20   for declaratory relief.

21                                   **CONCLUSION**

22        For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and

23   DENIED in part with leave to amend.  Any amended complaint must be filed within 28

24   days from the date of this order.  No additional parties or claims may be added without

25   leave of court or stipulation of defendant.

26   //

27   //

28   //

United States District Court
Northern District of California

1    **IT IS SO ORDERED.**

2    Dated: January 14, 2022

3                                        */s/ Phyllis J. Hamilton*
                                         PHYLLIS J. HAMILTON
4                                        United States District Judge