UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WEINSTEIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KATAPULT GROUP, INC.,<br><br>　　　　Defendant. | Case No. 21-cv-05175-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 50 |

Before the court is defendant's motion to dismiss the first amended complaint ("FAC"). The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for April 14, 2022, was VACATED. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a contract dispute. Plaintiff Andrew Weinstein, a resident of Ross, California, is a business executive and consultant "focused, among other things, on the convergence of financial technology (fintech), mobility, and the future of commerce." FAC ¶ 1. Defendant Katapult Group, Inc. ("Katapult"), formerly Cognical d/b/a Zibby, is an online consumer leasing platform for brick-and-mortar and omnichannel retailers. FAC ¶ 2. The company is incorporated in Delaware, and its principal place of business is in New York, New York. FAC ¶ 2.

On July 13, 2015, Katapult and plaintiff entered an Advisor Agreement ("the Advisor Agreement") in which plaintiff agreed to provide advising services to the

1  company.  FAC ¶ 8.  In addition to quarterly payments of $15,000 for his services, subject
2  to certain conditions, plaintiff was also entitled to earn options to purchase 76,435 shares
3  of Katapult common stock.  FAC ¶ 8.  Plaintiff's stock options are "subject to vesting
4  ratably over 36 months with 100% of the unvested shares subject to acceleration in the
5  event of a change in control of the Company, as well as the other terms of the
6  Company's Stock Option Plan and the applicable form of Stock Option Agreement (to be
7  executed by Advisor)."  Compl., Ex. A (Dkt. 47 at 13).  Plaintiff understood based on
8  conversations with Katapult's Board of Directors that the options were granted on

> standard terms, which included: that the term of options was such that they could be exercised once given the opportunity by Katapult, which it, by ordinary course, would provide upon vesting or no later than upon the occurrence of a liquidity event (such as acquisition of the company), that the options would not expire prior to the company providing an opportunity to exercise, such as, at the time of a liquidity event, and that they would be exercised at a de minimis price, at or around $0.15/share.

FAC ¶ 10.  The Stock Option Plan mentioned within the Advisor Agreement was never presented to plaintiff, and Katapult never indicated that there were any material terms left to be negotiated or additional terms to be signed.  Plaintiff fully performed his obligations under the Advisor Agreement.  FAC ¶ 14.

In July 2017, Katapult's CEO informed plaintiff that the company was experiencing cash flow issues and requested to stop making the quarterly payments of $15,000.  FAC ¶ 16.  Plaintiff consented upon confirmation that he was still entitled to the stock options and equity in Katapult.  FAC ¶ 16.

In December 2020, following acquisition of the company through a special purpose acquisition company that rendered stock in the company more valuable, plaintiff communicated with a former Katapult executive and a former Katapult Board Member, both of whom congratulated him for the returns he would receive based on his stock options.  FAC ¶ 18.  Plaintiff soon after contacted Katapult to learn how he could exercise his options to purchase the 76,435 shares of company stock as provided in the Advisor Agreement.  FAC ¶ 19.  The company responded by "(1) acknowledging that Mr.

Weinstein had earned options under the Advisor Agreement, but also (2) claiming the options had expired 'many years ago,' (purportedly based on restrictions never communicated to Mr. Weinstein), and (3) claiming the options expired ninety days after the purported termination of the Advisor Agreement (for which it had never provided notice to Mr. Weinstein)." FAC ¶ 19.  Katapult thereafter refused to allow plaintiff to exercise his options to purchase the stock.  FAC ¶ 20.

Procedural History

       Plaintiff originally filed this case in the Superior Court of California for the County of Marin on April 12, 2021.  Dkt. 1-1.  After service of process on June 10, 2021, Katapult removed the action to this court on July 6, 2021, based on diversity jurisdiction.  Dkt. 1.

       After removal and before responding to the complaint, defendant moved to compel arbitration.  Dkt. 14.  The court denied that motion on the basis that defendant failed to clearly establish that the parties agreed to arbitrate.  Dkt. 28.  Defendant then filed a motion to dismiss the complaint for failure to state a claim, which the court granted in part and denied in part.  The court granted dismissal of plaintiff's breach of contract claim because, under New York law, the Advisor Agreement was not sufficiently clear regarding the terms of the stock option award.  Dkt. 45.

       The FAC alleges the same causes of action as alleged in the original complaint: (1) breach of contract, (2) declaratory relief, and (3) quantum meruit.  Dkt. 47.  In addition to the stock options and in addition to what plaintiff sought in the original complaint, plaintiff includes another basis for the breach of contract cause of action.  Plaintiff seeks recovery of the quarterly payments of $15,000 dating back to July 2017 on the basis that he was never terminated by Katapult.  FAC ¶ 42(c).

       Defendant Katapult now seeks dismissal of the breach of contract and declaratory relief claims with prejudice.  Defendant does not argue that the quantum meruit claim should be dismissed.

//

//

**DISCUSSION**

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the

claims asserted in the complaint, and no party questions the authenticity of the document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), and exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims. See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

## B.   Breach of Contract – Stock Option Award

As with the previous round of briefing, this part of the dispute is the most heavily contested between the parties. To establish a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) adequate performance of the contract by plaintiff; (3) defendant's breach of the contract; and (4) damages. Red Fort Capital, Inc. v. Guardhouse Productions, LLC, 397 F. Supp. 3d. 456, 477-78 (S.D.N.Y. 2019). The only element the parties appear not to dispute at this point is that plaintiff performed under the terms of the Advisor Agreement. The parties continue to dispute whether the contract was sufficiently definite to be enforceable. The main issue is whether and how the court should consider plaintiff's pleading of the existence of a Stock Option Plan that fills in the Advisor Agreement's missing terms regarding the stock option award. See FAC ¶ 12. To reach the question of whether the Advisor Agreement is sufficiently definite to support a claim for breach of contract related to the stock option award, the new allegations are first tested against the doctrines of judicial estoppel and the parol evidence.

### 1.   Judicial Estoppel

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." New Hampshire v. Maine, 532 U.S. 742, 749

(2001). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Id. at 749. The Ninth Circuit "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Federal law governs the application of judicial estoppel in federal courts. See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 993 (9th Cir. 2012).

"Although judicial estoppel is probably not reducible to any general formulation of principle, . . . several factors typically inform the decision whether to apply the doctrine in a particular case." Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 270 (9th Cir. 2013) (quoting New Hampshire, 532 U.S. at 750-51 (internal quotation marks omitted)). These factors include: (1) whether the party's later position was clearly inconsistent with its earlier position; (2) whether the party had succeeded in persuading the court to accept its earlier position, such that accepting an inconsistent position in a later proceeding would create the perception that the court was misled; and (3) whether the party asserting an inconsistent position would derive an unfair advantage if not estopped. New Hampshire, 532 U.S. at 750-51. These factors are not to be taken as "inflexible prerequisites" or as an "exhaustive formula for determining the applicability of judicial estoppel," as other considerations may "inform the doctrine's application in specific factual contexts." Id. at 751.

Defendant argues that plaintiff's inconsistent positions implicate the doctrine of judicial estoppel. As defendant frames it, plaintiff's current position, that the Stock Option Plan existed and provides missing terms to inform the stock option award in the Advisor Agreement, is entirely inconsistent with the position he took in opposing the motion to compel arbitration, that the Advisor Agreement was a "stand alone agreement." Plaintiff

6

counters that the FAC's allegation regarding the existence of a Stock Option Plan is not inconsistent with Weinstein's earlier declaration that he had never seen the documents offered in support of Katapult's motion to compel arbitration—he did not state that no such plan existed.  The court determines that, in spite of the seemingly absolute nature of Weinstein's declaration, plaintiff's simultaneous allegations that the Advisor Agreement stood alone and that a Stock Option Plan existed without ever being presented to him are not clearly inconsistent.

Regardless of whether the allegations are clearly inconsistent, however, plaintiff did not succeed in convincing the court of his earlier position.  The court did not rely on plaintiff's declaration in denying the earlier motion to compel arbitration.  The motion to compel arbitration failed because the documents submitted by defendant were not properly authenticated and thus could not support a determination that the parties clearly intended to arbitrate.  See Dkt. 28 at 6-8.  In addition, defendant falls short on the third factor.  Defendant fails to establish how it would be prejudiced if plaintiff is not estopped from pleading the existence of the Stock Option Plan.  Plaintiff is thus not judicially estopped from pleading the existence of the Stock Option Plan.

### 2. Parol Evidence Rule

Under New York law, the parol evidence rule permits the consideration of oral terms that "interpret, explain, or clarify . . . the written document."  United States v. Lennox Metal Mfg. Co., 225 F.2d 302, 313 (2d Cir. 1955) (citation omitted).  Extrinsic evidence is admissible to clarify otherwise ambiguous terms of a contract.  Blue Jeans U.S.A., Inc. v. Basciano, 286 A.D.2d 274, 276 (App. Div. 1st Dept. 2001).  The parol evidence rule does not permit the consideration of oral terms that vary or contradict a written document, however.  Lennox Metal Mfg. Co., 225 F.2d at 313; Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC, No. 07-CV-7998, 2008 WL 3919186, at *1 (S.D.N.Y. Aug. 25, 2008) ("[T]he parol evidence rule excludes evidence of all prior or contemporaneous negotiations, agreements or understandings offered to contradict, vary or modify the terms of their writing.").

Where a contract contains an express merger or integration clause, the parties have expressed an intent that the written contract constitutes the entirety of the parties' agreement, and parol evidence is likely to be barred. Fierro v. Gallucci, No. 06-CV-5189, 2008 WL 2039545, at *6 (E.D.N.Y. May 12, 2008). A written agreement is integrated when the document "represents the entire understanding of the parties to the transaction." Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp., 269 F. Supp. 2d 206, 213 (S.D.N.Y. 2003).

District courts may invoke the parol evidence rule in consideration of a Rule 12(b)(6) motion to dismiss. Holloway v. King, 161 F. App'x 122, 124 (2d Cir. 2005). However, "because the factors the court must consider when determining whether a contract is integrated are fact based, whether a contract is integrated often is not appropriate for determination on a motion to dismiss." Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd., 483 F. Supp. 3d 195, 208 (S.D.N.Y. 2020) (cleaned up).

In plaintiff's view, "the allegations in the FAC 'about oral conversations, promises, and understandings,' Mot. at 12, provide context and clarity to the factual circumstances surrounding this dispute and the basis for Mr. Weinstein's pleadings on information and belief." Dkt. 51 at 26-27. But defendant emphasizes that the Advisor Agreement includes the following integration clause: "This is the entire agreement between the parties with respect to the subject matter hereof and no changes or modifications or waivers to this Agreement shall be effective unless in writing and signed by both parties." FAC, Ex. A, ¶ 7 (Dkt. 47 at 14).

Here, the court agrees with plaintiff's position—the parol evidence rule does not function to exclude the allegations of conversations he had with Katapult executives and board members that aid in explaining and clarifying the written agreement. Those conversations do not vary or contradict the terms of the Advisor Agreement. Instead, they explain missing terms such as the option term and exercise price, terms that plaintiff says conformed with the company's standard terms for option awards and industry

8

practices.

Defendant's reliance on the integration clause is convincing, but it is not dispositive at this stage because the determination of whether the agreement was fully integrated is better resolved on a fuller factual record.  See Farleigh Int'l Ltd., 483 F. Supp. 3d at 208.  Therefore, the FAC's allegations, including those describing conversations plaintiff had with Katapult executives and board members (see, e.g., FAC ¶ 13), are properly considered by the court in support of the first cause of action for breach of contract.

### 3. Indefiniteness as to Stock Option Award

"To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 93 N.Y.2d 584, 589 (1999).  "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp., 74 N.Y.2d 475, 482 (1989).  Moreover, an agreement in which there is "'no way to tell from the face of the document how to establish' missing material terms . . . is unenforceable." Sugerman v. MCY Music World, Inc., 158 F. Supp. 2d 316, 324 (S.D.N.Y. 2001) (quoting Express Indus. & Terminal Corp., 93 N.Y.2d at 590).

In Sugerman, the court resolved a summary judgment motion against a plaintiff where the agreement for his consulting services was not sufficiently definite; that is, the agreement did not provide a method to establish missing material terms related to a stock option award. Sugerman, 158 F. Supp. 2d at 324.  The court determined that a contract offering an option award must indicate the "material terms of any stock option arrangement, including: [1] how many options might be granted [2] of what class of stock; [3] when the options might be granted; [4] the option term; [5] the exercise price; and [6] the expiration date." Sugerman, 158 F. Supp. 2d at 325; see also Christian v. TransPerfect Glob., Inc., No. 17-CV-5554 (PKC), 2018 WL 4571674, at *7 (S.D.N.Y. Sept. 24, 2018) ("In the case of a promise for equity in a business, the promise must

9

convey the nature of the obligation, including the amount, the timing, and the source of payment.").

Here, the parties still dispute whether the Advisor Agreement's failure to specify certain terms regarding the stock options renders the contract ambiguous or indefinite. It is clear that the Advisor Agreement itself does not include all the material terms identified in Sugerman. The original complaint, relying solely on the contents of the Advisor Agreement, alleged only that plaintiff was entitled to stock options for (1) 76,435 shares of (2) common stock. Compl. ¶ 6 (Dkt. 1-1 at 5). The original complaint did not allege any of the remaining material terms necessary to definitely describe a stock option award, including (3) when the options might be granted, (4) the option term, (5) the exercise price, or (6) the expiration date. The original complaint did not mention or offer any description of the terms contained in the Stock Option Plan.

In the FAC, plaintiff adds allegations regarding the terms of the Advisor Agreement's stock option award. Plaintiff argues that he alleges each of the material terms identified in Sugerman, including:

**(1)** "how many options might be granted" (76,435 shares);

**(2)** the "class of stock" (common stock);

**(3)** "when the options might be granted" (over 36 months or immediately upon change of control);

**(4)** "the option term" and **(6)** "expiration date" (at a time to be offered by Katapult at or prior to the occurrence of a liquidity event, such as acquisition of the company); and

**(5)** the "exercise price" (a de minimis price at or around $0.15/share).

FAC ¶ 10. Plaintiff alleges on information and belief that the company's form Stock Option Plan and applicable Stock Option Agreement, though he did not sign them, included terms (3) through (6). FAC ¶ 12. That information and belief is supported by industry practice and conversations he had with Katapult executives and board members around the time he executed the Advisor Agreement. FAC ¶¶ 10, 13. The court

maintains some skepticism that plaintiff sufficiently pleads the missing elements because his allegations on information and belief barely reach "above the speculative level." Twombly, 550 U.S. at 555. But accepting the FAC as true, that the Stock Option Plan and applicable Stock Option Agreement included the missing terms necessary to fill out a stock option award, plaintiff alleges the existence of a sufficiently definite contract to support a claim for breach. The Advisor Agreement, in contrast to the agreement considered in Sugerman, gives the reader guidance on how to establish missing material terms—the Stock Option Plan and applicable Stock Option Agreement. FAC, Ex. A, ¶ 1 (Dkt. 47 at 13). On this basis, the court finds that plaintiff sufficiently pleads the terms necessary to establish an agreement as to the stock option award. The analysis does not end here, however.

   4.   **"Agreement to Agree"**

An "agreement to agree, in which a material term is left for future negotiations, is unenforceable." Doller v. Prescott, 167 A.D.3d 1298, 1300 (2018) (quoting Joseph Martin, Jr., Delicatessen v. Schumacher, 52 N.Y.2d 105, 109 (1981)). In Doller, the plaintiff alleged breach of contract based on his former employer's denial of a right of first refusal to purchase company equity. Doller, 167 A.D.3d at 1298. The Appellate Division affirmed dismissal of a breach of contract claim on the basis that the contract was indefinite as to the offer of equity, which specifically left the "precise manner" of the offer for future determination. Id. at 1299.

In Adler v. Payward, Inc., 827 F. App'x 133, 136 (2d Cir. 2020), the plaintiff similarly alleged a breach of contract based on a letter agreement for his employment. The letter agreement provided for plaintiff's compensation, but it expressly left the calculation of a commission to be set by a future, supplemental agreement between the company and plaintiff. Id. at 134. Plaintiff sued following his termination, seeking to recover unpaid commission, and the district court granted dismissal of the breach of contract claim on the basis that the letter agreement remained indefinite as to the how the commission would be calculated. Id. at 134. The Second Circuit reversed the

11

1  dismissal because the letter agreement made clear that the parties intended for plaintiff
2  to earn a commission, even if the formula for calculating the commission was left
3  unresolved, and it was possible for the court or the parties to fill in the missing terms. Id.
4  at 136 ("Discovery -- including, for example, as to the parties' course of performance,
5  further communications, industry practice or custom, the doctrine of *quantum valebat*, or
6  other objective criteria -- may provide a basis for filling in any missing terms.").

Here, plaintiff's stock options are "subject to vesting ratably over 36 months with 100% of the unvested shares subject to acceleration in the event of a change in control of the Company, as well as the other terms of the Company's Stock Option Plan and the applicable form of Stock Option Agreement (*to be executed by Advisor*)." FAC, Ex. A, ¶ 1 (Dkt. 47 at 13) (emphasis added). The face of the Advisor Agreement thus leaves the material terms discussed above (e.g., option term, exercise price) to be set in a separate, future agreement. Even though plaintiff has established a source for the missing terms in a way that appears to comply with the direction of Sugerman, Weinstein declares he was never presented with and never executed the Stock Option Plan or Stock Option Agreement. FAC ¶ 12. As with both Doller and Adler, the Advisor Agreement leaves substance for future resolution between the parties—the Advisor is to execute a subsequent agreement, the Stock Option Plan or Stock Option Agreement. Slightly different than the facts in both Doller and Adler, however, this reference to the Stock Option Plan and applicable form of Stock Option Agreement does not suggest that the documents remain to be negotiated, merely separately executed. And on this front, Adler suggests that the essential terms missing from the face of the Advisor Agreement may be filled in by the parties, potentially through discovery. The authority of Adler, an unpublished decision from the Second Circuit, is merely persuasive, however. Doller, published authority from a New York appellate court, provides controlling authority in this case given that New York law applies. Thus, as with the agreement in Doller, the Advisor Agreement constitutes an unenforceable "agreement to agree" as to the stock option award given the lack of mutual assent on the applicable Stock Option Plan. The court

12

dismisses the portion of the breach of contract claim focused on the denial of the stock option award with prejudice in light of his consistent position that he did not execute the Stock Option Plan and applicable Stock Option Agreement.

### C.     Breach of Contract – Quarterly Payments

As noted above, a plaintiff pleads a claim for breach of contract under New York law by alleging: (1) the existence of a contract; (2) adequate performance of the contract by plaintiff; (3) defendant's breach of the contract; and (4) damages. Red Fort Capital, Inc., 397 F. Supp. 3d. at 477-78. The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party" in assessing a motion to dismiss. Outdoor Media Group, Inc., 506 F.3d at 899-900.

Here, in addition to the alleged breach for denial of stock options, plaintiff claims that Katapult breached the Advisor Agreement by failing to make $15,000 quarterly payments after a July 1, 2017, conversation between Weinstein and Katapult's then-CEO. FAC ¶ 16. Katapult argues that the payments are not due because the company terminated the Advisor Agreement on July 1, 2017. But this unsupported contention is inconsistent with the FAC, which states that Weinstein continued to perform his responsibilities under the Advisor Agreement even after Katapult halted quarterly payments. See FAC ¶ 16. The FAC goes further to clarify that the Advisor Agreement remained in "full force and effect" (FAC ¶ 17), and that Katapult never provided the necessary written notice it was terminating the agreement (FAC ¶ 24). Defendant's suggested inference that plaintiff was terminated on July 1, 2017, plainly contradicts the FAC. The court must accept the factual allegations in the complaint as true, and defendant's contrary factual assertion thus fails. Therefore, defendant's motion to dismiss the breach of contract claim as to the quarterly payments is denied.

The court does not separately address the more detailed allegations regarding breach that plaintiff seeks to preserve. See Dkt. 51 at 25-26 (citing FAC ¶ 24). The breach of contract claim remains standing at least in part, and the court need not parse

13

through the nuanced and not-quite-distinct allegations to discern whether they should be trimmed.

**D.  Declaratory Relief**

Declaratory relief is not a standalone cause of action.  <u>Mayen v. Bank of America N.A.</u>, 2015 WL 179541, at *5 (N.D. Cal. 2015) ("[D]eclaratory relief is not a standalone claim."); 28 U.S.C. § 2201(a) (a federal court may only award declaratory relief "[i]n a case of actual controversy within its jurisdiction").

Because the court concludes that the breach of contract claim regarding the quarterly payments remains standing, the declaratory relief cause of action that seeks a remedy based on that breach also remains intact.  The motion to dismiss the declaratory relief cause of action is denied.

**CONCLUSION**

For the reasons set forth above, the court GRANTS defendant's motion to dismiss regarding the stock option award portion of the claim for breach of contract.  That portion of the claim is DISMISSED WITH PREJUDICE.  The court DENIES defendant's motion to dismiss regarding the quarterly payments portion of the claim for breach of contract.  The court DENIES defendant's motion to dismiss regarding the claim for declaratory relief.  Plaintiff's claim for quantum meruit remains in full as it was unchallenged by defendant.  Defendant shall have 21 days from the date of this order to answer the FAC.

**IT IS SO ORDERED.**

Dated: April 15, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge